213 So.2d 667

**J. B. KNOX et al.**

**v.**

**CUNA MUTUAL INSURANCE SOCIETY.**

**1 Div. 511.**

Supreme Court of Alabama.

Aug. 15, 1968.

Rehearing Denied Sept. 12, 1968.

M. A. Marsal and Howell, Johnston, Langford & Finkbohner, Mobile, for appellants.

Rae M. Crowe, Frank B. McRight and Armbrecht, Jackson & DeMouy, Mobile, for appellee.

MERRILL, Justice.

Plaintiffs took a nonsuit after their amended complaint, consisting of Counts One and Two, as last amended, were stricken on motion of defendant-appellee.

The original count claimed damages for a breach of a policy of insurance entered into by and between the defendant, Cuna Mutual Insurance Society, a Corporation, and Scott Southern Division Employees Credit Union (hereinafter called the Credit Union), of which the then single plain-tiff, J. B. Knox, was a member. The breach complained of was the failure of the defendant insurer to pay off the balance due on certain loans made by the Credit Union to Knox after Knox had become totally disabled. A copy of the insurance policy was made an exhibit to the count.

The demurrer to the complaint was sustained. Plaintiff then asked leave of the court to join the Credit Union as party plaintiff under the provisions of Tit. 7, § 135, Code 1940. The trial court granted the request upon the execution of a bond in favor of the Credit Union in the amount of $300, which plaintiff filed and was approved by the clerk.

Plaintiff then filed an amended complaint consisting of the two counts which were stricken. The amended Count One claimed jointly on behalf of the Credit Union and plaintiff, the insured member, under the same contract of insurance, which was attached as an exhibit to the count. Amended Count Two also claimed damages for the failure of the defendant to pay to the joined plaintiff Credit Union, the balance due on the loan which the Credit Union had made to plaintiff Knox under the policy; but this cause of action was based on alleged misrepresentations made by the defendant to both plaintiffs that the policy did cover the loans made to Knox. As exhibits to Count Two, there was a copy of a brochure issued by the defendant insurer for the purpose of inducing members of the Credit Union to borrow money from the Credit Union. We copy items numbered 1, 3, 5 and 7:

"1 NO WORRIES—When you borrow from the credit union, you needn't worry about paying it back if you die or become totally and permanently disabled.

"3 NO FEES—You pay nothing extra for this insurance—it is paid for by the credit union.

"5 AGE—Your loan balance is covered up to age 60 for total and permanent disability, and up to age 70 against death.

"7 PROTECTION—Your family and co-makers do not pay off the loan in the event of your death or total and permanent disability—CUNA MUTUAL pays it."

Count One of the amended complaint reads:

"Plaintiffs claim of the Defendants the sum of NINE THOUSAND SEVEN HUNDRED FOURTEEN AND 03/100 ($9,714.03) DOLLARS due under a policy of group insurance entered into by and between the Defendant and H & W (Hollingsworth and Whitney) Employees Credit Union, Mobile, Alabama, now known as Scott Southern Division Employees Credit Union, on the 17th day of March, 1950, a true and correct copy of which policy is hereto attached and marked Exhibit 'A' and forms a part hereof the same as if fully and completely set out herein, which said policy was supported by a valuable consideration promised and paid to the Defendants by the Plaintiffs and which said policy was for the mutual benefit of the credit union and the members thereof who thereafter secured loans from said credit union and which said policy, by the terms thereof, provided that coverage under said group policy of insurance would extend to said credit union and to the members thereof upon any loan made thereafter by said credit union to one of its members in an amount up to $10,000.-00 and provided that the said member to whom such a loan was thereafter made was at the time of such loan either physically able to perform the usual duties of their livelihood or who within a reasonable time thereafter was able to resume the usual duties of his livelihood and which said contract of insurance provided that upon the death or total and permanent disability prior to the borrowing member's sixtieth (60th) birth date that the Defendant would pay off the balance of any loans contracted while the credit union member making such loan from the credit union was able to meet the physical requirements set out hereinabove, and Plaintiffs aver and allege that while the Plaintiff, J. B. Knox, was a member of the Plaintiff, Scott Southern Division Employees Credit Union, being Successor to H & W (Hollingsworth and Whitney) Employees Credit Union, and on, to-wit, the 25th day of October, 1965, Plaintiff, J. B. Knox, borrowed the sum of NINE THOUSAND SEVEN HUNDRED FOURTEEN AND 03/100 ($9,714.03) DOLLARS from the Plaintiff, Scott Southern Division Employees Credit Union, being Successor to H & W (Hollingsworth and Whitney) Employees Credit Union, and Plaintiff, J. B. Knox, either paid or promised to and became obligated to pay his portion of the premiums due under said group policy of insurance in order to come under the terms of said group policy of insurance, a true & correct copy of which group policy of insurance is attached hereto and marked Exhibit 'A' and forms a part hereof the same as if fully and completely set out herein, and Plaintiffs, aver that on, to-wit, said date, the Plaintiff, J. B. Knox, was physically able to perform or within a reasonable time thereafter to resume the usual duties of his livelihood, and hence the Plaintiff, J. B. Knox, as well as the Plaintiff, Scott Southern Division Employees Credit Union, being Successor to H & W (Hollingsworth and Whitney) Employees Credit Union, both upon said date became mutually insured under the terms of the aforesaid Exhibit 'A' and Plaintiffs further aver that subsequent to, to-wit, said date, and on, to-wit, the 22nd day of March, 1966, the Plaintiff, J. B. Knox, became totally and permanently disabled prior to his sixtieth (60th) birthday, and Plaintiffs aver and allege that Plaintiff, J. B. Knox, promptly notified Defendant of the loss or of the happening of the aforesaid conditions requiring payment from the Defendant under the terms of the policy and Plaintiffs aver and allege that the Defendant did thereupon deny liability to the Plaintiffs under said Exhibit 'A' upon the sole ground that the Plaintiff was not at the time of the making of the above loan physically able to perform, or with a reasonable time thereafter to resume the usual duties of his livelihood, and Plaintiffs aver

and allege that in relying upon said denial of liability solely upon the aforesaid stated ground, that the Plaintiffs did incur trouble and expense and did hire attorneys and did file this lawsuit, and Plaintiffs further aver and allege that the aforesaid denial of liability on the sole stated ground was contained in letters from Cuna Mutual Insurance Society to Mr. R. M. Stevenson, Treasurer, Scott Southern Division Employees Credit Union, dated September 2, 1966, which position was reaffirmed in letters to Mr. John B. Knox, Plaintiff, from Cuna Mutual Insurance Society, dated September 23, 1966, and October 25, 1966, and Plaintiff claims interest from, to-wit, the 2nd day of September, 1966, and Plaintiffs aver and allege that the claim became immediately due and payable on, to-wit, the said date of September 2, 1966, hence this suit."

The attached policy shows that the amount remaining unpaid on loans made by the Credit Union to its members at the time of death or total and permanent disability of a member, up to $10,000, is insured on the payment of a monthly premium of $.075 per $100 on all loan balances.

The motion to strike was argued and submitted on November 10, 1967, and the order granting the motion was entered on January 23, 1968, and the nonsuit and the appeal were timely taken.

The trial court gave no reason for its ruling, but based on the briefs, the amended counts were stricken, either in part or wholly, because (1) plaintiff Knox had no right of action against defendant, the premiums on the policy were paid by the Credit Union, the proceeds were payable to it, and the Credit Union was the holder of both the legal and beneficial interest therein; (2) the amendments constituted an attempt to depart from the cause of action originally sued upon and were subject to be stricken.

The first reason mentioned supra presents a question of first impression in this court insofar as it relates to credit insurance. Apparently, the only case found by either party to the appeal is that of Murray v. Life Ins. Co. of Ga., 107 Ga.App. 545, 130 S.E.2d 767 (1963). We quote the *"Syllabus by the Court"*:

"A group creditors insurance policy, covering the balance of indebtedness due on outstanding loans against the death or total disability of the debtor, issued upon application by the creditor, in consideration of the creditor's payment of premiums, the proceeds of the policy being payable to the creditor, was collateral for the plaintiff's debtor's loans, furnished by the plaintiff by paying the premiums to the creditor. The legal and beneficial interest in the insurance contract being vested in the creditor, there was no right of action in the plaintiff against the defendant insurer for failure to pay either the plaintiff or his creditor on a disability claim by the plaintiff under the contract. Accordingly, the trial court did not err in sustaining the general demurrer to the petition and dismissing the action."

Appellants contend in brief, and appellee does not contest it, that the trial court in the instant case followed and based its decision on the *Murray* case. That case is not now the law of Georgia because the Georgia Insurance Code of 1960 defined credit life insurance as "insurance on the life of a debtor pursuant to or in connection with a specific loan or other credit transaction," and held that this provision in the Code recognized "the interest of the insured in the credit life insurance contract." Betts v. Brown, 219 Ga. 782, 136 S.E.2d 365; Pioneer Homeowners Life Ins. Co. v. Hogan, 110 Ga.App. 887, 140 S.E.2d 212.

Our statute on joining others as plaintiffs without their consent, Tit. 7, § 135, Code 1940, reads:

"If any person necessary to be joined as plaintiff in any suit or proceeding shall, upon request, not consent to join therein, his name may nevertheless be used by the other party plaintiff, upon

filing with the clerk of the court an obligation with good and sufficient sureties, to be approved by the judge or the clerk of the court in which the suit or proceeding is to be commenced, shown by his indorsement of approval thereon, to protect, save harmless, and indemnify the person whose name is so used, from the payment of any costs, judgment or expenses in said suit. If, however, the plaintiffs shall recover a judgment in such suit or proceeding, the person so refusing to allow the use of his name shall not be entitled to receive any part thereof until he pays the expense incurred in giving the obligations, and his equitable share of the costs and expenses of the litigation, including plaintiff's attorney's fees, and discharges the obligation."

In a mortgagor-mortgagee relationship where the mortgagee was protected by a loss payable clause in an automobile insurance policy against theft and there were some unpaid installments due, this court, in Aetna Ins. Co. v. Koonce, 233 Ala. 265, 171 So. 269, said:

"There is but one contract, made with the assured, as the promisee; one transaction covering one loss, payable, however, to mortgagor or mortgagee, or in part to each, as their interests shall appear.

"The insurer is primarily interested in protection against double liability; the mortgagee in getting what is due him when the loss is paid; the mortgagor in getting the entire loss paid.

"This can all be readily accomplished by a joint action of the mortgagor and the mortgagee on the policy. The court, when the money is paid in, has full power, if need be, to apportion it between the plaintiffs.

"Other courts have been confronted with cases under like or kindred policies, and have not always been in harmony as to the right of mortgagor or mortgagee to sue, where each was due a portion of the indemnity. But their right to sue jointly is generally recognized, and so

far as we have found, not denied in any jurisdiction.

"For full citation and review of authorities, see 8 Couch, Cyclopedia of Insurance Law, § 2081; also, sections 2051, 2052; 26 C.J. pp. 484, 485.

"We now approve the rule sustaining a joint action. Under our statutes, the right to sue jointly, in the first instance, warrants bringing in the mortgagee as coplaintiff by amendment; such amendment relating back to the bringing of the suit. Code, § 9513; Birmingham Gas Co. v. Sanford et ux., 226 Ala. 129, 145 So. 485.

*"It follows that the mortgagee was properly brought in by amendment in this cause. * * *"* [Emphasis supplied].

And in Mutual Benefit Health & Accident Ass'n of Omaha v. Bullard, 270 Ala. 558, 120 So.2d 714, we said:

" * * * Later cases support the general rule that one for whose benefit a valid contract is made although he is not a party to the contract and does not furnish the consideration therefor, may maintain an action on the contract against the promisor. * * *

\* \* \* \* \* \*

" 'The very term "group insurance," ex vi termini, implies that it is taken out, in blanket form, by some person, or corporation, to insure the lives of a number of persons, not for the benefit of the one procuring the blanket policy, but for the persons composing the class. An application for such a policy gives the insurer notice that the insurance is intended for the persons composing the group, not for the benefit of the one making the application, and who is the nominal beneficiary in the policy. The fact that a certificate may or may not be issued to each member of a class, to evidence his inclusion therein, although possibly contemplated, cannot defeat an action on the policy in a proper case. * * *"

The annotation in 5 A.L.R.3rd 962 begins with this statement:

"A fairly recent form of group life or disability insurance is the one which is issued to a creditor, vendor, or trustee to insure the life or health of a group of debtors or vendees as to whom the evidence of insurability is satisfactory to the insurer. This form of group insurance, called group credit life or disability insurance, is frequently employed by banks and other lending institutions, and is distinguished from the ordinary credit insurance in that it is issued for the purpose of protecting credit extended and that the insurance amount is payable upon the death or disability of the debtor or vendee, while the ordinary credit insurance covers the risk of extending credit and the amount of insurance is payable only where it is shown that the credit is lost. * * *

 *  *  *  *  *  *

"There can be hardly any doubt that the rules governing the construction of group insurance contracts generally fully apply to the construction of the policy provisions involved in the question discussed here. * * * *"

We think that the rule announced in Aetna Ins. Co. v. Koonce, 233 Ala. 265, 171 So. 269, when taken into consideration with the other authorities cited, should be extended from the mortgagor-mortgagee relationship to the debtor-creditor relationship in the credit insurance policy here involved. Certain it is that the insurer knew that it was insuring the payment of loans of unnamed members of the Credit Union only if these members died or were totally and permanently disabled. The creditor, Credit Union, was interested in the loans being paid, and the debtors, the members, were interested in their loans being paid if they continued to live and to work, and especially in the event of their death or disability to work.

■ We hold that under the circumstances of this case, the plaintiff had a sufficient interest and benefit in the contract of insurance to permit him to join the Credit Union as a party plaintiff and maintain this action against the insurer. The contract was actually for the mutual benefit of the Credit Union and the borrowing member, and the benefit to the member was more than an incidental benefit.

It follows that amended Count One was improperly stricken insofar as the first reason, listed supra, is concerned.

We turn now to the insistence that amended Counts One and Two were a departure from the original cause of action.

The applicable Code sections are Tit. 7, §§ 219, 220 and 239, Code 1940, which provide:

"§ 219. All actions on contracts, express or implied, for the payment of money, whether under seal or not, though some may contain a waiver of the right of exemption and others not, may be united in the same action, and the issues may be determined separately by the jury under the direction of the court, and the costs fairly apportioned.

"§ 220. All actions ex delicto may be joined in the same suit, and may be joined with actions ex contractu arising out of the same transaction, or relating to the same subject-matter, and the issue may be determined separately by the jury, and the proper judgment shall be rendered by the court and the costs fairly apportioned.

"§ 239. The court must, whilst the cause is in progress, amend all and every such imperfection and defect of form, on motion of the party, without costs and without delay, unless injustice will thereby be done to the opposite party, and must permit the amendment of the complaint by striking out or adding new parties plaintiff, or by striking out or adding new parties defendant, or by striking out or adding new counts or statements of the cause of action, which could have been

included in the original complaint or plea, and such amendment shall relate back to the commencement of the suit, and it shall not be held that such new counts or statements of the cause of action relate to new or other causes of action, so long as they refer to the same transaction, property and title and parties as the original, and where this is not apparent on the averments of the pleading, it shall be a question of fact for the jury. But the court shall have the right to refuse the allowance of any amendment to the complaint after the conclusion of the argument, when in its judgment the completion of the trial of the cause would be unreasonably delayed, or when in its judgment injustice would result."

A new cause of action is not set up by amendment where the same substantial facts are pleaded merely in a different form, so that a recovery on either count of the complaint would bar a recovery on the other. As long as the plaintiff adheres to the contract or the injury originally declared upon, an alteration of the modes in which the defendant has broken the contract or caused the injury is not an introduction of a new cause of action. The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope of the testimony. United States Steel Corp. v. McGehee, 262 Ala. 525, 80 So.2d 256; Isbell v. Bray, 256 Ala. 1, 53 So.2d 577; Alabama Consolidated Coal & Iron Co. v. Heald, 154 Ala. 580, 45 So. 686.

The fact that an amendment sets up a cause of action on a different theory relating to the same transaction, and on different legal principles, based upon a failure of proof as to the original complaint, does not make the complaint defective, nor start anew the statute of limitations. Tuscaloosa Motor Co. v. Cockrell, 272 Ala. 387, 132 So.2d 745, and cases there cited.

Here, the original count and amended Count One made the exhibited contract between the Credit Union and the insurer a part of the counts, and Count Two averred the effect of the contract. It was a breach of this contract on which all were based. The plaintiff's actual damages due under any of the counts is the amount necessary to pay off his loan from the Credit Union. A recovery under any count would be a bar to recovery under any other count, although Count Two of the amended complaint also sought punitive damages.

We hold that the causes of action stated in the different counts arose out of the same transaction, relate to the same subject matter and meet the test required for both joinder of parties and amendments. See Lovett v. Funderburk, 224 Ala. 634, 141 So. 557, and cases there cited.

Having decided that assignment of error 1 is well taken, that amended Count One states a cause of action and that it is not a departure from the original cause of action, it is not necessary to consider assignment 2, which charges that the court erred in granting the motion to strike Count Two of the complaint, as last amended. Tit. 7, § 220, quoted supra, permits joinder in the same suit of actions ex delicto and ex contractu arising out of the same transaction or relating to the same subject matter.

Appellee has filed a motion to strike the transcript of the record because there are three unnumbered pages following the certificate of the clerk which show a motion by appellee to strike appellant Knox's motion to join the Credit Union as a co-plaintiff and to fix bond, the order granting the motion, and the bond itself. This motion was denied. These three pages also show another motion by appellee to strike the names and address of a law firm appearing in the record on the ground that the said attorneys had not filed an appearance in the cause. This motion was granted.

These procedures should have been included within the matters certified by the clerk, and since they were not cer-

tified, they were not considered by this court. We have identified and described them merely to show that they had nothing to do with the merits of the controversy, and the inclusion or exclusion could not have affected the result reached in this case. We treat the three pages as surplusage.

The motion to strike the transcript is denied.

The judgment of the lower court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.