266 So.2d 268

Howard J. KIRKPATRICK

v.

Cecil R. WHITE et al.

8 Div. 465.

Supreme Court of Alabama.

Sept. 7, 1972.

Beddow, Embry & Beddow and J. Scott Vowell, Birmingham, for appellant.

Cloud, Berry, Ables, Blanton and Tatum, Huntsville, for appellees Herman Watson and C. M. Russell.

Camp, Page, Williams & Spurrier, Huntsville, for appellee Cecil R. White.

Bell, Richardson, Cleary, McLain & Tucker, Huntsville, for appellee June S. White.

HEFLIN, Chief Justice.

After demurrers were sustained both to the original single count complaint and the amended single count complaint of the appellant-plaintiff Howard J. Kirkpatrick, he suffered a non-suit and has appealed to this court for review of the judgment.

The appellant-plaintiff Howard Kirkpatrick brought this action based on material misrepresentation, claiming that certain persons had induced him to rely on a forged signature on a promissory note and a mortgage to his injury. The appellees-

defendants are Cecil White, June White (White's wife), Herman Watson and C. M. Russell (witnesses to the note and mortgage), and George Caldwell (notary on the mortgage).

The material allegations of the amended complaint follow. On May 24, 1966, the appellees-defendants Cecil and June White agreed to execute a promissory note secured by a mortgage on certain property owned by June White, located in Walton County, Florida, in order to secure the indebtedness of Cecil White to Lilly Flagg Builders Supply, Inc., a corporation (hereinafter referred to as Lilly Flagg), of which the plaintiff was a stockholder and officer at that time. On May 24, 1966, a note and mortgage were delivered to Lilly Flagg bearing the purported signatures of Cecil and June White, the two witnesses' signatures to both the note and the mortgage and the mortgage notarization. Appellant-plaintiff Kirkpatrick avers that on January 31, 1968, he, acting in reliance on the validity of the signatures, entered into an agreement with Lilly Flagg and others whereby he agreed to accept as part of the consideration for his stock in the corporation 48% of the accounts receivable of the corporation, which included the amount due on said note and mortgage. Some time thereafter, Cecil and June White defaulted under the terms of the note and foreclosure proceedings were instituted in May of 1969. On August 19, 1969, attorneys for June White informed attorneys for Lilly Flagg that June White's signature was a forgery on both the note and mortgage. Lilly Flagg was then unable to proceed with the foreclosure action to its conclusion. Appellant-plaintiff Kirkpatrick alleges he did not know of the fraudulent character of the signatures at the time he entered into his stock sale agreement on January 31, 1968, and that he entered said agreement in reliance of the validity of said signatures. Appellant-plaintiff Kirkpatrick avers that subsequent to August 19, 1969, he was informed of the forgery and then brought this suit claiming damages.

Appellant-plaintiff Kirkpatrick's theory of recovery is that one who perpetrates a fraud is liable to certain third persons who rely on the validity of the misrepresentations. Appellant-plaintiff Kirkpatrick cites Sims v. Tigrett, 229 Ala. 486, 158 So. 326, as support that our jurisdiction has extended liability to third persons. There, the court held an action was maintainable where a plaintiff had bought bonds from a person who had acquired the bonds in reliance on fraudulent misrepresentations in a circular published by the agent for the seller of the bonds. The rationale was that it was apparent that the fraud was intended to reach the ultimate buyer and that liability should be imposed when buyers were injured.

While there are apparently no Alabama cases which have treated the precise factual situation where one fraudulently represents the signatures on a note and mortgage to be valid and subsequently a third person relies on the note and mortgage, other jurisdictions treating a similar question have held the defendant liable. In National Shawmut Bank of Boston v. Johnson, 317 Mass. 485, 58 N.E.2d 849, the court sustained an action for deceit by a holder in due course of notes made to a corporation. The notes contained the purported signature of the defendant's wife as co-maker, but were forged by the defendant. The court, in sustaining the cause of action, stated:

". . . . It is also clearly implied from the judge's other findings that the taking of the notes by the plaintiff in good faith for value before maturity and without notice of the forgery was the natural and probable consequence of the defendant's fraud. The representation that the signatures were genuine was a continuing representation which went with the notes and was intended to be so regarded by those who would thereby be induced to purchase the notes in the belief that the signatures were what they appeared to be." (58 N.E.2d at 851.)

Also, in People's Nat. Bank of Boston v. Dixwell, 217 Mass. 436, 105 N.E. 435, where the facts showed that the bank had become the holder in due course of a note which was fraudulently signed by the defendant and given to one Mitchell, payee of the note, the court stated:

"It is urged, however, by the defendants that even if that be so, the liability is to Mitchell alone, the payee of the note, and that the right to enforce it has not been and cannot be assigned by him. But the representations are made in the document itself, which upon its face is negotiable in form. It is to be assumed that the defendants contemplated that it might pass into the hands of parties taking the same in reliance upon the statements therein contained, and that the defendants intended that in such a case the statements should stand as made to any rightful holder; or in other words that these statements are to be regarded as continuous." (105 N.E. at 436).

See also, National Bank of Savannah v. Kershaw Oil Mill, 202 F. 90 (4th Cir. 1912).

In the Restatement of the Law, Torts, § 532, the following is stated:

"One who embodies a fraudulent misrepresentation in an article of commerce, a muniment of title, a negotiable instrument or a similar document is subject to liability to another who in the course of a business transaction deals with him or with a third person in reliance upon the truth of the representation."

Under "Comment" of said § 532, the following appears:

"a. The rule stated in this Section may be expressed by saying that such a misrepresentation is made to all persons who may in the ordinary course of business have occasion to deal in a business transaction with such articles, muniments of title or negotiable instruments or with documents purporting to be such."

In Restatement of the Law, Torts 2d, this above quoted section and comment have not been changed. See also article entitled "Misrepresentation and Third Persons" by William L. Prosser, 19 Vand.L. Rev. 231, 246–250.

■ According to the allegations of the amended complaint the appellant-plaintiff Kirkpatrick, relying upon the misrepresentation, bargained for and received a 48% interest in the note and mortgage. This court holds that the allegations of the amended complaint state a cause of action against appellees-defendants Cecil White, Herman Watson, C. M. Russell, and George Caldwell.

■ This court is of the opinion that the amended complaint does not state a cause of action against the appellee-defendant June White. The only allegation of the complaint which might be construed as being a material misrepresentation on her part was the allegation that she agreed (along with Cecil White) to execute a promissory note secured by a mortgage. Thus the amended complaint does not charge her with a misrepresentation pertaining to the forgery of the note. If her name were forged to the promissory note and mortgage, then she would either be an innocent party or she would be precluded from raising the misrepresentation as a defense in the foreclosure proceedings by having represented it to be valid. See Title 39, Section 27, Code of Alabama, 1940, (which was a part of the Uniform Negotiable Instrument Act in force and effect in Alabama on May 24, 1966, but which was repealed and replaced by the Uniform Commercial Code, which became effective at Midnight on December 31, 1966; however, a similar provision now appears in Section 3–404 of Title 7A, Added Volume 3A to the 1958 Recompiled Code—unofficial). If the allegation that she promised to execute a promissory note can be construed as a misrepresentation (this the court does not decide), it would be a misrepresentation to Lilly Flagg and personal to it. Thus the appellant-plaintiff Kirkpatrick would have no cause of action against June White.

■ Also, this court agrees with appellees-defendants that there was a nonjoinder of necessary parties plaintiff. From aught that appears from the allegations Lilly Flagg owned the other 52% of the note and mortgage.

In Harris v. Swanson, 62 Ala. 299, 300, the court stated as follows:

"It is an elementary principle, that when the legal interest in a cause of action, whether it arises out of contract, or is ex delicto, is joint, residing in several persons, all who are living must join in the action founded on it."

This principle has been cited with approval in Holder v. Elmwood Corp., 231 Ala. 411, 414, 165 So. 235, 238, where it was stated:

"But where the legal interest in a cause of action is joint residing in several all those who are living must join."

Also see 67 C.J.S. Parties §§ 23 and 25.

While it is not clear from the allegations of the amended complaint whether or not Lilly Flagg would or would not be a willing party plaintiff to the suit, it is noted that a procedure is available for the plaintiff to use the name of an unwilling party as a party plaintiff to the action through appropriate indemnity procedure, if he does not agree to join as a party plaintiff. See Tit. 7, § 135, Code of Alabama, 1940, applied in Knox v. Cuna Mutual Insurance Society, 282 Ala. 606, 213 So.2d 667. The same result is available under Rule 19(a) of the Federal Rules of Civil Procedure.

Because of the failure to make Lilly Flagg a party plaintiff the trial court was correct in sustaining the demurrers. Further the trial court was correct in sustaining the demurrers of June White for the reasons heretofore set forth.

Affirmed.

MERRILL, BLOODWORTH and Mc-CALL, JJ., concur.

COLEMAN, J., concurs in the result.