485 So.2d 312 (1986)
TREADWELL FORD, INC.
v.
Clarence W. CAMPBELL; Dairyland Ins. Co.; Katherine Chapman Hamilton and Frederick B. Hamilton, as Co-Executors of the Estate of Sallie Chapman Hamilton, Deceased; and Jacqueline Evans.
DAIRYLAND INSURANCE COMPANY
v.
Katherine Chapman HAMILTON and Frederick B. Hamilton, as Co-Executors of the Estate of Sallie Chapman Hamilton, Deceased; Jacqueline Evans; and Treadwell Ford, Inc.
83-574, 83-583.
Supreme Court of Alabama.
January 10, 1986.
As Corrected on Denial of Rehearing March 7, 1986.
*313 James H. Crosby, Philip H. Partridge, E.J. Saad, and Vincent A. Noletto, Jr., of Brown, Hudgens, Richardson, P.C., Mobile, Bibb Allen, of London, Yancey, Clark & Allen, Birmingham, for appellant/cross-appellee Treadwell Ford, Inc.
Bert S. Nettles and Forest S. Latta, of Nettles, Barker & Janecky, Timothy P. McMahon of Reams, Vollmer, Philips, Killion, Brooks & Schell, Mobile, for appellant Dairyland Ins. Co.
Neil L. Hanley, Mobile, for appellee Clarence W. Campbell.
Richard Bounds and James A. Yance, of Cunningham, Bounds, Yance, Crowder & Brown, Mobile, for appellees Katherine Chapman Hamilton, Frederick Chapman Hamilton, and Jacqueline Evans.
ALMON, Justice.
These appeals are from consolidated cases in which judgments were entered on verdicts for the plaintiffs totalling $1,410,000. Sallie C. Hamilton and Jacqueline Evans were struck by a pickup truck driven by Clarence Campbell. Hamilton died as a result of her injuries. Her executors filed a wrongful death action, Code 1975, § 6-5-410, and Evans and Campbell each filed separate suits for damages against Treadwell Ford, Inc., which had sold Campbell the truck. Hamilton's executors and Evans later added as a defendant Dairyland Insurance Company, which had, prior to the truck's coming into Treadwell's possession, paid a total loss claim on the truck and sold it to a salvage company.
The truck, a 1979 Ford F-100 pickup truck, was extensively damaged while insured by Dairyland. It was rebuilt after Dairyland sold it and before Treadwell purchased it. The alleged cause of the plaintiffs' accident was that the accelerator linkage stuck against the firewall, causing the truck to surge forward uncontrollably. The plaintiffs recovered from Treadwell on various theories relating to the alleged defect in the firewall. The primary basis of recovery from Dairyland was Dairyland's failure to remove the vehicle identification number (V.I.N.) plate and the license plate from the truck, as required by Code 1975, § 32-8-87, before reselling it. Dairyland was also sued under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). Treadwell filed cross-claims against Dairyland in the death action and *314 in Evans's action, and a third-party claim in Campbell's action. The jury returned verdicts for Treadwell on the cross-claims and for Dairyland on the third-party claim.
The history of the truck from its original purchase will explain Dairyland's and Treadwell's involvement. Gary Nicholson bought the truck new from a dealer in Mississippi in late 1979. In January 1980 he wrecked the truck by running into the rear end of a flatbed trailer truck. The front end of the truck suffered at least the following damages. The hood, fenders, and grill were crumpled, and the engine was driven back into the firewall. The bumper was attached to "bumper horns," metal brackets extending forward on the frame. The impact bent these bumper horns. The frame was bent somewhat and the post holding the hinges for the driver's door was knocked out of alignment.
Nicholson had collision insurance with Dairyland. After that first accident, the truck was towed to a salvage dealer, Late Model Auto Parts. Dairyland's appraiser determined that the truck was a total loss and Dairyland paid Nicholson accordingly. Code 1975, § 32-8-87(b), at the time Dairyland processed the claim, required that
"An insurance company which pays money as compensation for total loss of a motor vehicle shall obtain such vehicle's certificate of title, manufacturer's identification number plates and license plates and, within 72 hours after receiving them, shall forward them to the department for processing."
The evidence was undisputed that Dairyland did not obtain the identification and license plates from Late Model. Instead, the certificate of title found its way to Late Model. John Ewing, Dairyland's senior claims examiner, testified by deposition that the file showed Dairyland sent the title certificate and a bill of sale to Late Model on June 11, 1980.
Late Model Auto Parts then sold the truck to L.R. Boyette. Boyette hired Jim Harris, of Harris's Body Shop, to repair the truck by replacing the fenders, grill, radiator, and hood. Harris cut the original bumper horns off the frame and welded new ones in their place. He took the truck to a dealership and had the frame straightened. He realigned the driver's doorpost so the door closed properly. Harris testified that he did not replace the engine onto its mounts or do any work on the firewall. When he finished his body work, he completely repainted the truck in its original colors.
Boyette testified that, as he used the truck after it was rebuilt, he occasionally had trouble with the accelerator sticking, but that he could free it by tapping the gas pedal. Boyette sold the truck after a few months to Rudolph Phillips. Phillips traded the truck to Treadwell Ford for a smaller pickup truck in December 1980.
Treadwell performed a complete inspection of the truck. Treadwell's mechanic, William Brooks, made the inspection. He testified that he put the truck on the lift so he could inspect it for oil leaks or frame damage and removed the wheels so he could inspect the brakes. He also inspected the transmission, the engine, the body, and the interior and test-drove the truck. He testified that one of the objects of the inspection was to see if the truck had been wrecked. Brooks testified that he noticed that the truck had been repainted, but that he did not see the welds on the new bumper horns, the damage to the firewall, or any other evidence of the reconstruction. The truck passed the inspection for Ford's Extended Service Policy on used vehicles.
Campbell bought the truck from Treadwell on December 30, 1980. He testified that when he test-drove the truck, he experienced a problem with the truck jumping forward when he put it in gear, so that when he returned to the Treadwell lot, he asked the salesman, Charles Stevens, to inspect the truck. Campbell left to withdraw the money for the truck from his bank account. He testified that when he returned, the salesman told him the truck had been inspected and was "OK," so he bought the truck. Five days later, the accident in question occurred.
*315 The accident causing the plaintiffs' injuries occurred shortly after 11 p.m. on January 4, 1981, in the parking lot of the Mobile Infirmary in Mobile, Alabama. Campbell was sitting in the truck, which he had bought five days earlier at Treadwell's used car lot, waiting to give a ride to a friend. When she got in the truck, he put it in gear and it accelerated forward, jumped the curb, and struck three nurses who were walking to their cars. One of them, Nancy Morris, was not injured. Evans's injuries were relatively minor. Hamilton died almost immediately. Campbell became ill and vomited after the accident.
Campbell testified that the truck "took off in a flash" and that the brakes would not stop it. The plaintiffs called as an expert witness an accident reconstruction specialist, who testified that the damage still visible indicated that the engine broke off its mounts in the first accident and slid backwards into the firewall. He also stated that the bracket holding the accelerator rod had an old crack that, in his professional opinion, was probably caused by the first accident. The expert testified that the cracked bracket allowed the accelerator rod to move sideways and occasionally bind against the bent firewall. He demonstrated that the rod and the firewall showed wear that was consistent with this theory. The expert gave his opinion that the damage from the first accident caused the accelerator to stick and caused the accident which is the subject of this suit. Further, the expert testified that brake failure is common in cases of uncontrolled acceleration.
The jury awarded Hamilton's executors $1,000,000 in the death action against Treadwell and Dairyland, awarded Evans $60,000 against both defendants, and awarded Campbell $350,000 against Treadwell. Campbell claimed damages for physical illness and emotional anguish, and punitive damages for fraud.

ISSUES RAISED BY TREADWELL
Treadwell[1] raises the following principal issues: (1) the trial court should not have submitted the cases to the jury on the Alabama Extended Manufacturer's Liability Doctrine; (2) the evidence did not support a finding that Treadwell negligently inspected the truck; and (3) the evidence did not support Campbell's claim of fraud.

Alabama Extended Manufacturer's Liability Doctrine
Treadwell argues that the trial court erred in denying its motion for directed verdict on the Alabama Extended Manufacturer's Liability Doctrine counts of the complaints. See Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala.1976); and Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976). Treadwell contends it is not subject to liability under the AEMLD for any of several reasons, including its argument that the AEMLD does not apply to sellers of used vehicles.
The record reveals, however, that Treadwell's motion for directed verdict did not specifically include a challenge to this cause of action.
"[I]f a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or more of those counts, he must challenge this by motion for directed verdict, specifying the count which is not supported by evidence and detailing with specificity the grounds upon which the particular count is not supported by the evidence. If this is not done and all counts go to the jury and a general verdict is returned, the court will presume that the verdict was returned on a valid count."
Aspinwall v. Gowens, 405 So.2d 134, 138 (Ala.1981); Cincinnati Ins. Co. v. Little, 443 So.2d 891 (Ala.1983).
One of the grounds alleged in the directed verdict motion was that Treadwell's conduct had no causal relation to the plaintiffs' injuries. Treadwell asserts that "causal relation" is a term of art within the AEMLD and so should be considered as directing the trial court's attention to the *316 impropriety of submitting this count to the jury. This argument cannot succeed, however, because every cause of action entails a causal relation between the wrong committed and the harm suffered. The mere use of this phrase in a generalized motion for directed verdict is not sufficient to overcome the rule quoted above.

Negligence
Treadwell argues that the defect in the firewall that caused the accelerator to stick was latent and that Treadwell had no duty to inspect for latent defects. Lindsey v. International Shoe Co., 45 Ala.App. 566, 233 So.2d 507 (1970); Stamper v. Parr-Ruckman Home Town Motor Sales, Inc., 25 Ohio St.2d 1, 265 N.E.2d 785 (1971); Landry v. Baton Rouge Lumber Co., 434 So.2d 1144 (La.Ct.App.1983).
The evidence of record presents, however, a jury question as to whether the defect was patent or latent. Treadwell undertook a duty to inspect for damage from prior wrecks. There was substantial evidence that Treadwell negligently performed this duty.
Photographs admitted into evidence show extensive damage to the firewall. It would be reasonable for the jury to conclude that this damage would have been easily discoverable. Treadwell performed a thorough inspection for the sake of offering Ford's Extended Service Policy and represented that the truck passed this inspection. The mechanic who performed this inspection testifed that damage from previous wrecks was one of the main things he looked for. The judgment on the jury's finding that Treadwell negligently failed to discover the defect is due to be affirmed.

Fraud
Treadwell further contends that the only representation it made was that the truck was "OK," which is mere puffery and not a statement of fact which would support a finding of fraud. Lucky Mfg. Co. v. Activation, Inc., 406 So.2d 900 (Ala. 1981); Harrell v. Dodson, 398 So.2d 272 (Ala.1981); Ray v. Montgomery, 399 So.2d 230 (Ala.1980). Campbell replies that the context in which the statement was made shows otherwise. He testified that when he test-drove the truck it was jumping forward when he started off, but that he thought the problem might just be his unfamiliarity with the truck. Campbell testified that Stevens "said that he would check it and see that it would be okay whenever we come back from downtown."
In this context, the jury could have taken the statement that the truck was "OK" as a representation that Treadwell had inspected the truck and found nothing wrong. The jury could have inferred from the obviousness of the damage to the firewall that Treadwell's salesman made an intentional misrepresentation in making this statement. On the basis of this evidence, the jury could have concluded either that Treadwell had not properly inspected the truck but told him it had, or that Treadwell had inspected and found the firewall damage, but failed to inform Campbell of the damage. Thus the evidence supports a finding of intentional misrepresentation sufficient to support an award of punitive damages.
Treadwell also argues that Campbell failed to prove that he relied on the alleged misrepresentation, because he had already decided to buy the truck before the statement was made. Campbell's request for a further inspection of the truck logically makes any acceptance at that time conditional, depending upon a favorable report after the inspection. Thus, there was evidence that the final decision to purchase came after the statement that the truck was "OK." Moreover, Treadwell, in connection with offering the Extended Service Policy, made a representation that Treadwell had thoroughly inspected the truck and found nothing wrong. As discussed above, the jury could have found from the evidence that this representation was false. The jury could also have found that Campbell relied upon this misrepresentation in purchasing the truck. Thus, the record supports a finding of reliance by Campbell.
Finally, Treadwell argues that the evidence does not support a finding of fraud *317 because Campbell was not pressured into accepting the truck, but rather was told that he could take the truck to a mechanic of his choosing for an inspection. Treadwell cites by analogy Hopper v. Curry, 408 So.2d 83 (Ala.1981). In Hopper the seller of land told the purchasers that he thought the parcel was 40 acres, but that they could have it surveyed to find out. When it later turned out to be only 30 acres, they sued for fraud. This Court affirmed the judgment in favor of the seller because the purchasers failed to accept the seller's offer to have the property surveyed.
Treadwell, however, actively represented that it had thoroughly inspected the truck and found it to be in good working conditionsuch good condition that it was willing to offer Campbell its one-year service contract by which Ford would pay for repairs. Treadwell, by inspecting the truck, had more basis for knowledge as to the representation than the seller in Hopper, who did not say he had had the property surveyed. Furthermore, when Campbell asked Stevens to further inspect the truck, Stevens agreed to do so and told Campbell later that Treadwell's mechanic had inspected the truck and that it was "OK." Thus, this case is different from Hopper in two respects. Treadwell made a more definite statement than the seller in Hopper did. Treadwell, unlike the seller in Hopper, also agreed to perform an inspection and then, the jury could have found, misrepresented the results of the inspection.
Stevens testified that Treadwell normally charged customers for the Extended Service Policy, but that Campbell received the policy at no additional charge. Campbell was justified in relying on Treadwell's statements about the condition of the truck.
Treadwell raises other issues which we have reviewed and determined not to present reversible error.

ISSUES RAISED BY DAIRYLAND

Violation of Motor Vehicle Title Law
Dairyland's first issue raises the question of liability based on Dairyland's violation of the Alabama Uniform Certificate of Title and Antitheft Act, Code 1975, § 32-8-1 et seq.
Dairyland violated § 32-8-87(b), supra, by failing to obtain the V.I.N. and license plates from the truck and send them, together with the certificate of title, to the Department of Revenue. This violation is a misdemeanor. § 32-8-13. The legislature substantially amended § 32-8-87 after the time of this accident. Act No. 85-650, 1985 Ala. Acts 1010. We express no judgment whether these changes would affect the kind of liability sought to be imposed upon Dairyland if the case had been based on failure to comply with the Act after the effective date of this amendment.
The complaints in the Hamilton and Evans cases included counts alleging that Dairyland's violation of this Code section constituted negligence which proximately caused the plaintiffs' injuries. Treadwell alleged in its cross-claims and third-party claim that Dairyland's failure to comply with the Act constituted negligence or a misrepresentation of the condition of the truck. We do not address the question of whether the cross-claims and the third-party claim are viable or are prohibited attempts at compensation among joint tortfeasors, in view of our resolution of the issues on the merits of the plaintiffs' claims in favor of Dairyland.
The trial court instructed the jury that Dairyland's violation of this Act was negligence as a matter of law, that the plaintiffs were within the class of persons intended to be protected by the Act, and that the jury was to decide whether Dairyland's violation of the Act was the proximate cause of the accident. Dairyland objected to these instructions.
Before the violation of a statute can be taken as evidence of negligence as a matter of law in a civil action, the plaintiff must show that the statute was designed to protect the class of persons of which the plaintiff is a member and to prevent the type of injury which the plaintiff has suffered, that the defendant violated the statute, *318 and that the violation proximately caused the injury. Fox v. Bartholf, 374 So.2d 294 (Ala.1979); Johnson v. I.B.E.W. Local 558 Properties, Inc., 418 So.2d 885 (Ala.1982); Murray v. Alabama Power Co., 413 So.2d 1109 (Ala.1982).
The Act was not enacted to prevent motor vehicle accidents, but to prevent motor vehicle thefts. The very title states that it is an antitheft act. The overall plan of the Act shows exclusive attention to maintaining records of the identity and ownership of vehicles.
Hamilton's executors, Evans, and Treadwell advance the argument that, because the Act calls for an inspection of a "total loss" vehicle before the issuance of "rebuilt" identification plates, §§ 32-8-48, -35, the Act provides for a safety inspection to protect subsequent purchasers from dangerous, defectively rebuilt vehicles. The inspection is made by the Department of Revenue, however, not the Department of Safety (a point confused by the trial court in its instructions). A reading of § 32-8-35 shows that the inspection is for the purpose of determining that the vehicle for which new plates are being sought is the one described in the application for a new certificate of title.
Of course, if the Act was not intended to prevent the sort of injury complained of here, it cannot have been enacted to protect accident victims. It was enacted to protect owners of vehicles from thefts. See State v. Spurlock, 393 So.2d 1052 (Ala.Crim.App. 1981).
For the foregoing reasons, violation of the Act did not subject Dairyland to liability for negligence. Treadwell has waived any claim that violation of the Act subjected Dairyland to liability for misrepresentation as alleged in Treadwell's claims against Dairyland, because that theory was not submitted to the jury in the court's instructions and has not been argued here.

AEMLD
Dairyland is entitled to a reversal on the AEMLD because that doctrine does not impose liability on Dairyland under the facts of this case. The principles of liability under the AEMLD are stated in Casrell, supra, as follows:
"To establish liability, a plaintiff must show:
"(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
"(a) the seller is engaged in the business of selling such a product, and
"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."
335 So.2d at 132-33. The decision in Atkins added a discussion on the affirmative defense of lack of causal relation:
"Causal Relation. The defendant may establish that there is no causal relation in fact between his activities in connection with handling the product and its defective condition. For example, the defendant may show that he is in the business of either distributing or processing for distribution finished products; he received a product already in a defective condition; he did not contribute to this defective condition; he had neither knowledge of the defective condition, nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer."
335 So.2d at 143 (footnote omitted).
Clearly, the AEMLD does not apply to the seller of a used, wrecked vehicle for salvage. Dairyland had nothing to do with the repair work, nor did Dairyland sell or attempt to sell other than to a junkyard for salvage. This is too far afield of the sellers in the chain of marketing a new product to be reached by the Alabama Extended Manufacturers' Liability Doctrine.
For the foregoing reasons, the judgments on the verdicts against Treadwell are affirmed, and the judgments on the verdicts against Dairyland, including those on the cross-claims, are reversed, and the cause remanded.
*319 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
All the Justices concur.[2]

ON APPLICATION FOR REHEARING
PER CURIAM.
OPINION CORRECTED; APPLICATION OVERRULED.
All the Justices concur.
NOTES
[1] Both appellants have retained additional counsel on appeal.
[2] Justice Houston, not being on the Court at the time of submission, has listened to the tape of oral arguments and studied the record and briefs.