This appeal arises from an action based on allegations of fraud, negligence, and wantonness that was filed by Bobby Cochran against Johnny Spradlin Auto Parts, Inc. ("Spradlin"). The jury returned a verdict awarding Cochran $15,200, and the trial court entered a judgment on that verdict. Spradlin argues that the evidence was insufficient to support the verdict, that the amount of damages was improper, and that the court erred in instructing the jury.
In October 1985, Spradlin purchased a 1983 Chevrolet Camaro automobile, Vehicle Identification Number ("V.I.N.") 1G1AP871XDN142905 ("142905"), from Auto Salvage Pool, Inc. The vehicle had been declared a total loss because it had been stripped of all removable parts. For that reason, Spradlin received a salvage certificate of title[1] from Allstate Insurance Company. Subsequently, Spradlin purchased, and received a regular title to, another Camaro, a 1986 model, V.I.N. 1G1FP87FOGL139254 ("139254"), which had been moderately damaged in a wreck.
Alan Spradlin ("Alan"), an employee of Spradlin, used the two Camaros to rebuild a single Camaro for Jim Lowery. The 1986 Camaro had been struck on the right front quarter and therefore had damage to the unitized body in that area. Alan testified that he removed the unitized body from the 1986 and replaced it with that from the 1983 rather than cutting out the damaged front quarter and welding in replacement parts; he testified that this procedure resulted in a more structurally sound vehicle. He described the process as follows: he removed the seats, dashboard, and interior trim from the 1986; removed the hood, the rear hatch lid, and other body parts; and cut off the roof where it was spot-welded to the body. After removing these parts, he lifted the unitized body off the drive train and placed the unitized body from the 1983 onto the drive train of the 1986. He then replaced the 1986 parts that he had *Page 740 
removed, repaired the right front fender, the hood, and the bumper, and had the car painted.
Because the 1983 vehicle had been declared a total loss, the Department of Revenue had removed the public V.I.N. plate from the cowling under the windshield. When Alan placed that portion of the 1983 onto the drive train of the 1986, he removed the public V.I.N. plate from the discarded body of the 1986 and riveted it to the place on the 1983 body from which the plate had been removed. Spradlin sold the rebuilt Camaro as a 1986 model for $11,000 to Jim Lowery, transferring the certificate of title that it had obtained with the 1986 car. Lowery obtained from State Farm Mutual Automobile Insurance Company an insurance policy describing the car as a 1986 model. About a year later, Lowery died in a fire at his home that also damaged the Camaro. Based upon that damage, State Farm paid benefits to Lowery's estate in the amount of $12,496.80 and title to the Camaro was transferred to State Farm.
In 1988 Cochran, doing business as Cochran Auto Sales, purchased the Camaro for $2,100 from State Farm at an auction and, because the car had been badly damaged in the fire at Lowery's house, received a salvage title, which indicated that the car was a 1986 model. Cochran repaired and refurbished the vehicle and made an application with the Alabama Department of Revenue for a new title. Sid Blair, who inspected the car for the Department, noticed that the public V.I.N. plate was not attached with the standard manufacturer's rivets. He performed a more thorough inspection and discovered that the engine, transmission, and public V.I.N. plates had the 1986 number 139254, but that the confidential number on the body was the 1983 number 142905. He therefore refused to issue a new title to Cochran.
Cochran communicated the problem to Alan Spradlin, who filed an administrative appeal of the decision not to issue a certificate of title to the car. On March 15, 1989, after Cochran had filed this action against Spradlin, the Department of Revenue issued a title based on Alan's testimony in the administrative hearing. Instead of allowing the 1986 V.I.N. plate to remain in place, however, the Department removed it and issued a state assigned number, which was placed on the door jamb of the car. The certificate of title gave that assigned number, AL86AN00300004207, as the vehicle identification number, and stated, "this title secured under a three year surety bond" (see Ala. Code 1975, § 32-8-36).
Cochran's action against Spradlin and State Farm alleged breach of contract, three counts of fraud (counts two, three, and four), and breach of warranty of title. Pursuant to a pro tanto agreement between State Farm and Cochran, State Farm was dismissed. Cochran amended his complaint to add a sixth count, alleging that Spradlin had negligently or wantonly removed the 139254 V.I.N. plate from the body of the 1986 Camaro and placed it on the 1983 body, and that, as a result, he was damaged because the car was of a lesser value than it appeared to have when he purchased it, because he had spent a great amount of money repairing a vehicle that was worth less than it would have been if it had had a valid title, and because he bad spent time and effort in obtaining a valid title.
Spradlin filed a motion to strike the breach of contract and breach of warranty counts, which was granted, and the case proceeded to trial on the fraud counts and the negligence and wantonness count. At the conclusion of the case, Spradlin made an oral motion for a directed verdict as to count three, which alleged fraudulent suppression of material facts concerning the Camaro. In support of the motion, Spradlin's attorney argued that there was insufficient proof that Spradlin had suppressed material facts that it was under a duty to disclose to Cochran. The trial court denied the motion and submitted all three fraud counts and the count for negligence or wantonness to the jury. The jury returned a general verdict in favor of Cochran and assessed $5,200 compensatory damages and $10,000 punitive damages. The trial court entered judgment on that verdict. *Page 741 
Spradlin raises the following issues: (1) whether the trial court erred in entering judgment on the verdict because "there was insufficient evidence to support the verdict on each count"; (2) whether the trial court erred in denying Spradlin's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial "based upon the lack of sufficient evidence to support the verdict on count three of the complaint which was challenged by the motion for a directed verdict"; (3) whether the amount of compensatory damages was supported by the evidence; (4) whether the award of punitive damages "was a legal award based upon the applicable law of Alabama"; and (5) whether the trial court erred in giving several of Cochran's requested jury instructions over Spradlin's objections.
An appellant who seeks reversal of an adverse judgment on the ground that there is insufficient evidence must meet a two-pronged test: he must have asked for a directed verdict at the close of all the evidence, specifying "insufficiency of the evidence" as a ground, and he must have renewed this motion by way of a timely filed motion for judgment notwithstanding the verdict that again specified the same insufficiency-of-the-evidence ground. Rule 50, Ala.R.Civ.P.;King Mines Resort, Inc. v. Malachi Mining Minerals, Inc.,518 So.2d 714 (Ala. 1987); Bains v. Jameson, 507 So.2d 504 (Ala. 1987). "[I]f a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or more of those counts, he must challenge this by motion for directed verdict, specifying the count which is not supported by evidence and detailing with specificity the ground upon which the particular count is not supported by the evidence." Aspinwall v. Gowens, 405 So.2d 134 (Ala. 1981).
Spradlin first argues that it was entitled to a j.n.o.v., even though it made no motion for a directed verdict on counts two, four, and six, because, it says, there was insufficient evidence to support any of the four counts that were submitted to the jury. This attempt to distinguish this case fromAspinwall overlooks the more general rule that, in order to raise insufficiency of the evidence on appeal, the appellant must have raised that ground in both a motion for directed verdict and a motion for j.n.o.v. Spradlin did not even make a general motion for directed verdict on all counts or make a general statement that the evidence was insufficient to submit the case to the jury, much less argue to the trial court how counts two, four, and six were supposedly not supported by the evidence. Thus, Spradlin has not preserved the question of the sufficiency of the evidence in support of those counts, and his first argument does not present any basis for reversal of the judgment.[2]
Count three alleged that Spradlin suppressed the material fact that the Camaro "was not a 1986 Chevrolet Carmaro V.I.N. [139254]." Alabama Code 1975, § 6-5-102, provides: "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." See Crowder v.Memory Hill Gardens, Inc., 516 So.2d 602 (Ala. 1987); Hopkinsv. Lawyers Title Ins. Corp., 514 So.2d 786 (Ala. 1986).
Spradlin argues that there was no evidence that it suppressed any material fact that it had a duty to disclose. Cochran responds that the fact of the substitution of the 1986 V.I.N. plate into the place of the 1983 was a material fact that Spradlin suppressed. He testified that he would not *Page 742 
have been interested in the car if it had not had the 1986 V.I.N. plate:
 "Q. Had you gone to the auction that day and that vehicle was represented to you as being a 1983 Camaro, would you have purchased that vehicle?
 "A. No, sir, it wouldn't be worth fixing, spending too much money on it. I wouldn't approach one that didn't have a V.I.N. plate on it. I never bought one that didn't have a V.I.N. plate on it.
 "Q. When you say that, are you talking about a car with a plate — ?
 "A. If it's gone out of the windshield, you can never get it put back there. The State pulls it.
 "Q. Does that, in your opinion, devalue the car also?
"A. Yes, sir, tremendously."
Even Alan Spradlin admitted that the V.I.N. plate was important in determining the value of an automobile and that a car without good V.I.N. plates would bring less money:
 "Q. Would that car with the Alabama assigned number, would that bring less money than a car with a V.I.N. plate, same model, same components as one with a V.I.N. plate on the public V.I.N. number?
"A. It would.
"Q. Bring less?
"A. The car would bring less money.
"Q. The one with the assigned number?
"A. Yes, sir.
"Q. Why is that?
 "A. The car would just bring less in an auction. If you ran it through an auction, it would bring less to an individual. It would be just what you could get out of the car, what your asking price was and how bad they wanted it.
 "Q. Because the dealers know there is a number on the door that says something is wrong with the title?
 "A. Not necessarily. They do that also on recovered theft cars.
". . . .
 "Q. It [the car] has now an '86 assigned number; is that correct?
 "A. It has an '86 good title, yes, and it has a Department of Revenue assigned number.
 "Q. And that's not a number put in the windshield, the public V.I.N. number, is it?
"A. No, sir, they affix theirs on the door.
 "Q. And, when Mr. Cochran goes to sell that vehicle, or tries to sell that vehicle, people with knowledge of that, he'll have problems trying to sell that vehicle, won't he?
"A. Depends."
Alan's replacement of the 1986 V.I.N. plate constituted a suppression of the fact that the car was not what the V.I.N. plate represented it to be, that is, a 1986 Camaro with a factory-installed V.I.N. plate. The significance of the suppression is illustrated by Cochran's remark that, once the factory-installed public V.I.N. plate is removed, "you can never get it put back there"; by Alan's admission that a car with an assigned plate "would bring less money"; and by the fact that, once it knew the details of Spradlin's work on the car, the Department of Revenue did not allow the V.I.N. plate to remain on the car, but placed one of its assigned plates on the door jamb. Thus, by riveting the 1986 plate into the place where the 1983 plate had been, Alan suppressed a material fact concerning the car.
Spradlin argues that it had no duty to disclose anything about the car to anyone other than Lowery, and that Lowery knew what was done because he periodically observed the progress of the repairs. Cochran responds by citing Sims v. Tigrett,229 Ala. 486, 158 So. 326 (1934), which rejected a similar claim that an action for fraud could not be maintained because any representation made by the defendant was not made to the plaintiff:
 "[I]f defendant caused the representations to be made, and the public were intended to be thereby induced to act upon them, and plaintiff was within the class of those so contemplated, the action *Page 743 
for deceit against defendant may be maintained by plaintiff, though defendant did not sell the bonds to plaintiff, but sold them to another, and he to plaintiff, both in reliance on the truth of the representations. King v. Livingston Mfg. Co., 180 Ala. 118, 126, 60 So. 143 [(1912)]."
229 Ala. at 491, 158 So. at 330. See also Kirkpatrick v. White,289 Ala. 110, 266 So.2d 268 (1972); Hulsey v. M.C. Kiser Co.,21 Ala. App. 123, 105 So. 913 (1925).
The Alabama Uniform Certificate of Title and Antitheft Act, Ala. Code 1975, § 32-8-1 et seq. ("the Act"), provides for the issuance by the state of certificates of title and defines offenses relating to falsification of such certificates or vehicle identification numbers. Section 32-8-86 states in part:
 "(a) A person who willfully removes or falsifies an identification number of a vehicle, engine, transmission or other identifiable component part of a vehicle is guilty of a Class A misdemeanor and shall be punished as required by law.
 "(b) A person who, willfully and with intent to conceal or misrepresent the identity of a vehicle, engine, transmission or other identifiable component part of a vehicle or [sic] removes or falsifies an identification number of the same is guilty of a Class C felony and shall be punished as required by law.
 "(c) A person who buys, receives, possesses, sells or disposes of a vehicle, or an engine, transmission or other identifiable component part of a vehicle, knowing that an identification number of the same has been removed or falsified, is guilty of a Class A misdemeanor and shall be punished as required by law.
". . . .
 "(g) An identification number may be . . . placed or restored on [a vehicle] by authority of the department without violating this section; an identification number so placed or restored is not falsified."
(Emphasis added.)
Thus, without authorization from the Department of Revenue, Spradlin was prohibited from removing the V.I.N. plate from the discarded 1986 body and placing or restoring it on the portion of the 1983 body that he had combined with the parts from the 1986 model. Under the circumstances of this case, the Act imposes a duty on Spradlin to disclose to the Department of Revenue the facts concerning the substitution of the V.I.N. plate.
Spradlin contends that Cochran cannot use the Act to show special circumstances requiring disclosure for Cochran's benefit, because, it contends, the Act was promulgated only to protect against automobile theft and does not provide protection against the kind of harm Cochran alleges. He citesTreadwell Ford, Inc. v. Campbell, 485 So.2d 312 (Ala. 1986), appeal dismissed, 486 U.S. 1028, 108 S.Ct. 2007,100 L.Ed.2d 596 (1988), in support of that proposition. In Treadwell this Court held that an insurer's violation of § 32-8-87(b) would not support an action alleging that a motor vehicle accident was proximately caused by that violation. The Court held that the plaintiff could not use that section to prove negligence as a matter of law because he was not in the class of persons sought to be protected by the statute, which was enacted to protect owners of vehicles from thefts, not to require safety inspections. The facts of this case are distinguishable from those in Treadwell.
This case, unlike Treadwell, presents facts within the purpose of the Act. This is not an attempt to make the Act provide for safety. The mechanism by which the Act protects against thefts is an encompassing system of tracing automobiles and their component parts. "The overall plan of the Act shows exclusive attention to maintaining records of the identity and ownership of vehicles." Treadwell at 318. Persons who buy cars are entitled to rely on the accuracy of such elements of that tracing system as certificates of title and V.I.N. plates. Cochran, as a subsequent purchaser of the car, is within the class of persons who are the beneficiaries of the duty not to falsify identification numbers or certificates of title and so can claim both that the circumstances imposed a duty on *Page 744 
Spradlin to disclose, see Crowder, supra, and Hopkins, supra, and that that duty inured to his benefit, see Sims, supra, andKirkpatrick, supra.
For the reasons stated, the trial court did not err in submitting count three to the jury or in denying Spradlin's motion for j.n.o.v. on that count. Furthermore, the evidence discussed above is sufficient to show that there was significant credible evidence supporting the verdict on count three. Therefore, the trial court did not err in denying Spradlin's motion for a new trial on count three based on the claim that the verdict was against the great weight and preponderance of the evidence. Thus, Spradlin's second argument presents no basis for reversal.
Spradlin's third argument is that the evidence did not support the amount of compensatory damages awarded. Spradlin raised this issue in its motion for a new trial. It points to testimony by Cochran that the 1986 engine and transmission were worth the $2100 he paid for the car at the auction. However, Cochran also testified that the car could have been sold for $9000 to $9500 if the title had been as it appeared to be and that, shortly before trial, the car had brought a bid of only $3800 at an auction. The award of $5200 therefore appears to be the difference between his lower estimate of the value the car should have had and the value it had with the assigned number and the certificate of title that the Department of Revenue had issued after Spradlin's appeal.
Generally, when a purchaser alleges misrepresentation and does not offer to return the item purchased and rescind the sale, his measure of damages is the difference between the value of the item as represented and its actual value.Cahaba Valley Dev. Co. v. Nuding, 512 So.2d 46 (Ala. 1987);Boriss v. Edwards, 262 Ala. 172, 77 So.2d 909 (1954). "This measure essentially gives the person fraudulently induced into the purchase the 'benefit of the bargain.' " Reynolds v.Mitchell, 529 So.2d 227 (Ala. 1988). Although the test is usually to be applied to the values at the time of the sale, Cochran did not discover the misrepresented title until he had expended his labor and money in restoring the car to working condition. Under the circumstances, and especially because Spradlin did not object to Cochran's testimony as to value or seek to present evidence of difference in value at the time of his purchase, we will not reverse the denial of new trial on this ground.
Spradlin argues that the award of punitive damages was improper. He again bases his argument on his contention that there was no evidence of a misrepresentation on which Cochran relied in purchasing the car at auction. That premise has been rejected above.
 "Punitive damages may be recovered in a fraud action if the fraudulent misrepresentation was malicious, oppressive, or gross, or made with knowledge of its falseness, or so recklessly as to amount to the same thing or was made with the purpose of injuring the plaintiff."
Curry Motor Co. v. Hasty, 505 So.2d 347, 351 (Ala. 1987) (citations omitted); Big Three Motors, Inc. v. Smith,412 So.2d 1222 (Ala. 1982). Also, the wantonness aspect of count six would support an award of punitive damages. Foster v. Floyd,276 Ala. 428, 163 So.2d 213 (1964).
Spradlin knew or should have known that by placing the 1986 V.I.N. plate on the car it was representing that the Camaro was a 1986 model with an ordinary title and identification numbers and that subsequent purchasers might rely on the validity of that representation. Alan's testimony regarding his knowledge of procedures for having the Department of Revenue inspect rebuilt salvage vehicles and of the diminution in value of vehicles with assigned numbers instead of V.I.N. plates is sufficient evidence to support the award of punitive damages under a finding of fraudulent misrepresentation or of wantonness. Therefore, the award of punitive damages will not be disturbed.
Spradlin also urges this Court to reverse the judgment because the trial court gave several requested jury instructions, over its objections. It argues that *Page 745 
instructions 13, 15, 16, 23, and 29 were not based on facts adduced at the trial. An instruction is not objectionable as being abstract if there is any evidence, however slight, on which to predicate the charge. Cooper v. Bishop Freeman Co.495 So.2d 559 (Ala. 1986). The arguments are premised on Spradlin's contentions that it did not make any representations on which Cochran relied, that its actions were not taken with the intent necessary to support punitive damages, and that Cochran was not damaged by any act of Spradlin's. Those contentions have been rejected above and, similarly, they do not support Spradlin's argument here.
Spradlin also argues that the court erred in giving instruction number 34, which charged on the effect of §32-8-87(f). Spradlin argues only that the charge should not have been given because, he argues, the Alabama Uniform Certificate of Title and Antitheft Act does not protect persons such as Cochran or support a finding under count six of negligence as a matter of law, citing Treadwell Ford v.Campbell, supra. As we have explained above, the allegations of this case come sufficiently within the purpose of that Act to distinguish this case from Treadwell.
In reviewing a trial court's instructions to a jury, an appellate court must read and consider the charge as a whole in determining whether the instructions correctly set forth the applicable law. Grayco Resources, Inc. v. Poole, 500 So.2d 1030
(Ala. 1986). Viewing the charge as a whole, we hold that Spradlin's arguments do not present any ground for reversal based on the giving of the requested instructions.
For the foregoing reasons, the judgment in favor of Cochran is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.
[1] A salvage certificate of title is issued for a car that an insurance company has declared to be a total loss because it is cheaper to replace the automobile than to repair it. See Ala. Code 1975, § 32-8-87.
[2] Count two alleged that Spradlin willfully or recklessly misrepresented that the vehicle was a 1986 Camaro, V.I.N. 139254, and count four alleged that, by concealing the fact that the vehicle "was not a 1986 Chevrolet Camaro V.I.N. [139254]" Spradlin "consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to Plaintiff in deceiving him." The resolution of the questions of the sufficiency of the evidence to support count three and the appropriateness of the award of punitive damages will effectively resolve Spradlin's arguments as to counts two and four. Similarly, Spradlin's arguments with respect to count six are effectively addressed in response to other arguments.