398 So.2d 272 (1981)
James Noble HARRELL et al.
v.
Hal M. DODSON, Jr., et al.
79-277.
Supreme Court of Alabama.
May 8, 1981.
*273 George Beck, Montgomery, for appellants.
Jere L. Beasley and Frank M. Wilson, Montgomery, for appellees Hal M. Dodson, Jr. and Sharon D. Dodson.
C. Lanier Branch, Montgomery, for appellee Rossi & Turner Realty, Inc.
Robert C. Black of Hill, Hill, Carter, Franco, Cole & Black, Montgomery, for appellees Jean M. Evans and Stowers-Abrell, Inc.
BEATTY, Justice.
This action was brought by James N. Harrell and his wife Jennifer W. Harrell for damages allegedly suffered by them as a result of fraudulent misrepresentation and concealment, negligence and wanton misconduct in connection with the sale to them of a dwelling house.
The Harrells appeal from the final judgment entered on a directed verdict in favor of Hal M. Dodson and wife Sharon D. Dodson, sellers of the house; Rossi & Turner Realty, Inc., their broker; Stowers-Abrell, Inc., purchasers' broker; and Jean Evans, its agent. We affirm.
The Dodsons sought to sell their fifty year old house through Rossi & Turner Realty, Inc., using their daughter Cathy Berman as listing agent. The house was sold to Mr. and Mrs. Harrell who had previously engaged the services of Jean Evans, a salesperson of Stowers-Abrell, Inc., to locate a house for them.
The Harrells were first shown the house by Jean Evans. When questioned about Mrs. Evans's representation concerning the house Mrs. Harrell testified as follows:
Q During your observation of the house, did you have an occasion to ask Mrs. Evans any questions about the condition of the house?
A Well, after we got around the house, I asked her questions. I asked her specifically about the wiring and the plumbing and the condition of the roof, the possible condition of the foundations.
. . . .
Q Did she reply?
A She did. She said that if the property passed the VA appraisal, it would be basically sound and she said we would not have to worry.
Q Did she say it would be VA appraised?
A Yes, she did.
Q What did she say about that?
*274 A As I recall, she said the appraisal would be done. It hadn't yet been done.
Q Did you ask her about these conditions one time or more than once?
A I asked her about the conditions probably several times but at the same period of time.
Q In other words, would you move into one room and ask about the condition or were you all in one room standing____
A No, we were all in one room standing.
Q During this conversation, you asked her several times about the condition of the house?
A Yes.
Q And what was her response each time?
A That we would not have to worry because it would be looked at professionally. It would be appraised.
Q Did she say by whom it would be appraised?
A She said the Veterans Administration. It would be appraised and inspected by the Veterans Administration.
Neither Jean Evans, nor any of the other defendants, made any other representations regarding the condition of the house with the exception of a description of it contained in a multiple listing book. Mr. Harrell testified he had seen the listing book and it stated the house was in excellent condition. That listing had been taken by Cathy Berman and placed with the multiple listing service through Rossi & Turner Realty, Inc.
The Harrells inspected the house and satisfied themselves that it was in good condition. It was inspected by a VA approved appraiser upon the basis of whose appraisal the house was approved for a VA guaranteed loan on it as an existing house, not newly constructed. After the loan was closed on July 15, 1978, the sale concluded, and the Harrells had moved into the house, cracks in the walls, bulges in paneling, warped doors and frames and unlevel floors began to appear. The Harrells consulted two structural engineers who attributed these problems to settlement and movement of the house and concluded that repairs would be costly.
With the exception of the Dodsons' testimony, there was no evidence the other defendants knew any more about the condition of the house than a visual inspection, such as the one made by the Harrells, would reveal. Regarding the Dodsons' knowledge of the condition of the house, there was evidence that Mr. Dodson had, on occasion, leveled the floors, patched mortar cracks and replaced bricks in the exterior brick work. Fifteen to seventeen months before selling the house, Mr. Dodson had hung new wallpaper over an area where cracks in the plaster had previously been filled.
We must decide whether there was sufficient evidence to present a jury question as to whether any of defendants were guilty of fraudulent misrepresentation or concealment, negligence or wanton misconduct proximately resulting in damage to the Harrells.
First we address the issue of misrepresentation. The elementary rule is that evidence of misrepresentation of a material fact must be shown to support a claim for damages on account of a misrepresentation. Code 1975, § 6-5-101. This court has stated that:
Whether a given representation is an expression of opinion or a statement of fact depends upon all the circumstances of the particular case, such as the form and subject matter of the representation and the knowledge, intelligence and relation of the respective parties. The mere form of the representation as one of opinion or fact is not in itself conclusive, and in cases of doubt the question should be left to the jury. [Citations omitted.]
. . . .
Whenever a person states a matter which might otherwise be only an opinion, not as a mere expression of his own opinion but as an existing fact material to the transaction, so that the other party *275 may reasonably treat it as a fact, the statement clearly becomes a statement of fact. [Citations omitted.] [Fidelity & Casualty Company of New York v. J. D. Pittman Tractor Company, 244 Ala. 354, 358, 13 So.2d 669, 672 (1943).]
The representation of Jean Evans which we have quoted is, in our considered opinion, not a misrepresentation of material fact but a statement of opinion only. Although there is however testimony that Jean Evans made that statement in response to the Harrells' specific inquiries, the statement itself and the circumstances under which it was made leave no doubt in our minds that it was a sales "puff." The testimony of Mr. Harrell affirmatively supports this conclusion. On cross-examination Mr. Harrell testified as follows:
Q Well, what representationyou have filed a suit against her, and you say in the complaint that Mrs. Evans made false statements to you concerning this transaction, and I want you to tell us what those false statements are.
A Well, I think that the point here is that the house was probably not even as Mrs. Evans thought it was. Now, I don't want to beyou know, this is not a personal vendetta, but I'm saying that the house was sold as one thing and turned out to be another thing, and that the agent of that sale happened to be Mrs. Evans.
Q To your knowledge, did Mrs. Evans have any knowledge of any of the defects that you later found?
A To my knowledge, no.
Q Did she, to your knowledge, conceal any condition?
A I would have no way of knowing this.
Q All right. So, do you know of any facts that have led you to believe____
A Nothing that would lead me to suppose so.
Q that she either made any false statements to you or concealed any facts from you? Do you have any knowledge of any facts of that?
A I'm hard pressed to know what, you know, what kind of evidence that I could have to know, I mean____
Q That's what I am asking you, what evidence do you have?
A I don't know.
Q All right, sir. In regard to the VA appraisal, did she make any representations to you as to what that appraisal represented, or what it was supposed to be?
A I don't recall. I don't recall the, you know, exact discussion about the VA, except I remember Mrs. Evans saying the VA, you know, approved it, it had to be basically sound. This did not distress me because I certainly would assume that myself.
Q You would assume that was the case also?
A Absolutely. . . .
At the close of his testimony Mr. Harrell reiterated his testimony:
Q All right. Now, in your complaint, Mr. Harrell you say that Mrs. Evansthe plaintiff requested of defendant agent as to the condition of the roof, foundation, sewer, plumbing, electrical wiring, and general soundness of the residence, and plaintiff inquired of defendant agentand by the way, defendant agent is Mrs. Evans, and that's how she is identified in the complaintas to whether said residence would be thoroughly inspected and appraised, and defendant agent stated in reply that plaintiff could rest assured that if the residence passed the VA inspection and appraisal, then the house was sound; is that the allegation? Tell me about any conversations in which Mrs. Evans said that the condition of the roof, foundation, sewer, plumbing, and electrical wiring was sound. Is that a specific thing that she said to you all, either you or your wife?
A I don't know whether, you know,I don't know to what extent these problems were addressed.
*276 Q Are you saying that just in general she said that the house appeared sound?
A This is my remembrance of the conversation, yes. I cannot recall it precisely.
Q You can't recall really specifically in discussing the roof or foundation or the sewer or plumbing or wiring?
A Iwe may have. I didn't sayI can't say categorically.
Q You can't say whether you did or didn't?
A No. We've talked about the condition of the house, but I don't remember how much time we spent on any given part.
Q All right. I gathered your real complaint about Mrs. Evans is that she told you that it would be appraised by a qualified VA appraisal, is that your basic complaint against her?
A Well, yes. This certainly, you know, would have a bearing.
Q Do you have any other complaints of any wrong that Mrs. Evans did to you other than that?
A No. As I said earlier, I seeMrs. Evans represented the house as it was given to her to represent. I feel that she did that fairly.
Additionally, there is testimony that VA appraisers are required to inspect older homes, note deficiencies and recommend repairs to make the house safer, sound and sanitary under the VA's basic standards. Although the VA does not guarantee the condition of the property or assume responsibility for its condition, still this evidence discloses that the VA is not indifferent to its condition. The form Certificate of Reasonable Value, issued by the VA, provides for the specification of repairs to be completed. The salesperson, who filled out the sales contract, understood that the VA appraisal was important. When she executed the contract she specifically provided: "Seller to pay for any repairs required by VA." It is clear from these circumstances that her statement was thus one of her own opinion and not a statement of fact, and therefore there was insufficient evidence of an actionable misrepresentation by Jean Evans on which to go to the jury. Cf. Ray v. Montgomery, Ala., 399 So.2d 230 (1980).
There is evidence of only one other representation, made by any of the defendants, that plaintiffs contend misled them. That was in the form of a notation that Mr. Harrell allegedly saw in a multiple listing book while riding with Jean Evans to inspect certain houses the Harrells might be interested in buying. That listing noted the condition of the house as "exc.," allegedly meaning excellent. The listing was taken by Cathy Berman and placed with the Multiple Listing Service by Rossi & Turner Realty, Inc. There is no evidence the notation was pointed out to the Harrells in answer to some specific question. In fact, there is no evidence to provide a basis for attaching to that representation an implied underlying representation of material fact that the house was in excellent condition justifying reliance upon it as such rather than merely an opinion to the same effect. We therefore conclude the Harrells failed to adduce sufficient evidence to support a cause of action for misrepresentation or fraud based upon the notation in the multiple listing book.
Respecting the issue of fraudulent concealment under Code 1975, §§ 6-5-102 and 6-5-104, one charged with that act or acts, must either be under an obligation to communicate either by virtue of the existence of a confidential relationship, or from the particular circumstances of the case, or must knowingly conceal a material fact with intent to deceive. There is no evidence to support an inference that Stowers-Abrell, Inc., Rossi & Turner Realty, Inc. or Jean Evans knew any material facts about the house that, under those tests, were fraudulently concealed. As a matter of law, one can only be liable for concealing facts of which one has knowledge. Brasher v. First National Bank of Birmingham, 232 Ala. 340, 168 So. 42 (1936).
*277 Examining the record regarding the sellers, we find that Mr. Dodson testified that he had made several repairs over a period of years, including jacking up floors and repairing cracked plaster. Although this might conceivably be evidence of sellers' knowledge of some past settling of the fifty year old house, sellers owed no duty of disclosure to the purchasers. The purchasers were allowed to, and did, fully inspect the house. The purchasers asked no questions nor had any communications with the sellers regarding the condition of the house. The evidence that the sellers made certain repairs on the house, the most recent of which was made over a year before the house was sold, does not, without more, give rise to a reasonable inference that the sellers intentionally concealed a material fact for the purpose of continuing a false impression or suppressing inquiry, and thereby effecting a sale. Ray v. Montgomery, supra; Cashion v. Ahmadi, Ala., 345 So.2d 268 (1977). We conclude that a verdict was properly directed on the issue of fraudulent concealment as to all defendants.
Finally, we must consider whether the trial court erred in directing a verdict for all defendants on the Harrells' negligence and wanton misconduct claims. The Harrells alleged, as the bases for those claims, that defendants undertook to advise and represent to them the condition and market value of the house and that advice and those representations were negligently, willfully or wantonly made by the defendants, who negligently, willfully and wantonly inspected, examined, appraised, or represented the condition and value of the house to the Harrells. The only evidence of any advice or representations made to the Harrells regarding the condition or value of the house is that discussed previously regarding the claim for misrepresentation. Clearly, there is no evidence that any of the defendants, except Jean Evans, undertook in any manner to advise or make representations to the Harrells.
The trial court did not err in directing a verdict in favor of all of the defendants and therefore the judgment as to all defendants is due to be, and is, hereby affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, JONES, ALMON and SHORES, JJ., concur.
MADDOX, J., is recused.
EMBRY and ADAMS, JJ., dissent.
EMBRY, Justice, dissenting:
I must respectfully dissent. I cannot agree that the trial court did not err in directing a verdict in favor of the defendant Jean Evans and her principal, Stowers-Abrell, Inc. In her role as agent for the Harrells, when inquiry was made of her by them concerning the house under discussion for possible purchase by them, she was under a duty to disclose anything she knew concerning that house, and conditions of the soil in the Montgomery area that might affect the foundation causing cracks and similar kinds of damage, gained from information commonly known to the community and especially to those engaged in the sale of dwelling houses. The evidence is clear that she was an experienced real estate agent and was completely familiar with those conditions.
In the majority opinion a statement of Jean Evans made to the Harrells is set out to the effect that they (the Harrells) would not have to worry because it (the house) would be looked at professionally. It would be appraised and inspected by the Veterans Administration. This is not the only representation made by Evans to the Harrells. Mrs. Harrell testified, when asked about any statement that Jean Evans may have made concerning that house, that: "... She [Jean Evans] said that if the property passed the VA appraisal, it would be basically sound and she said we would not have to worry." Mr. Harrell testified that Mrs. Evans said the VA, you know, if it approved it, it had to be basically sound. These statements by Mrs. Evans are more than statements of mere opinion; they amount to representations of present fact and are, therefore, in my judgment, actionable. The record is clear to the effect that *278 the trier of fact, the jury, would certainly be authorized from all the evidence in the case to conclude that not only were they misrepresentations of fact but they were also relied upon by the Harrells to their detriment. Clearly, this evidence was sufficient to submit the case to the jury as to the liability of Jean Evans and, vicariously, that of Stowers-Abrell.
Therefore, directing a verdict in favor of Mrs. Evans and Stowers-Abrell, Inc., is reversible error and requires reversal of the judgment as to those parties and retrial of the case regarding their liability regarding the issue of actionable misrepresentation.
ADAMS, J., concurs.