626 So.2d 1288 (1993)
Jimmy H. DODD
v.
NELDA STEPHENSON CHEVROLET, INC., et al.
1911399.
Supreme Court of Alabama.
August 6, 1993.
Rehearing Denied September 24, 1993.
*1289 Robert H. McKenzie of Holt, McKenzie, Holt & Mussleman, Florence, for appellant.
J.A. Keller of Keller & Pitts, Florence, for Nelda Stephenson Chevrolet, Inc.
Nicholas B. Roth of Eyster, Key, Tubb, Weaver & Roth, Decatur, for General Motors Corp.
A. Stewart O'Bannon, Jr. of O'Bannon & O'Bannon, Florence, for Bob Hembree Motor Co., Inc.
ALMON, Justice.
The plaintiff, Jimmy H. Dodd, appeals from a summary judgment entered in favor of the defendants, Nelda Stephenson Chevrolet, Inc., Bob Hembree Motor Company, Inc., and General Motors Corporation. Dodd's action alleged fraud, suppression, fraudulent concealment, breach of express warranty, and breach of implied warranties of merchantability or fitness for a particular purpose, all in connection with his purchase of a 1990 Chevrolet Camaro R.S. automobile from Nelda Stephenson Chevrolet.
On May 5, 1990, Dodd went to Nelda Stephenson Chevrolet ("Stephenson Chevrolet") in Florence, Alabama, to purchase a car. Because Stephenson Chevrolet did not have the type of car Dodd requested, Stephenson Chevrolet arranged to obtain the car Dodd wanted from Bob Hembree Motor Company, Inc. ("Hembree Motors"), a Chevrolet dealership in Guntersville, Alabama. Almon Truitt, an employee of Stephenson Chevrolet, drove to Hembree Motors and exchanged a new car from Stephenson Chevrolet for a 1990 Camaro.
Truitt returned with the Camaro late in the afternoon on May 5, 1990. Approximately two hours later, Dodd picked it up. Because Stephenson Chevrolet had not had an opportunity to clean the car, it instructed Dodd to return the Camaro six days later to be cleaned.
A day or so after Dodd took possession of the Camaro, he noticed what looked like streaks or sand marks on the right rear quarter panel. When Dodd brought the Camaro *1290 to Stephenson Chevrolet the next Friday, Dodd informed a sales representative of Stephenson Chevrolet of the problem. Billy Ray, the sales representative at Stephenson Chevrolet with whom he had been dealing, informed Dodd that the 36-month warranty covered the problem and offered to repaint the car. Dodd, however, declined the offer to paint the Camaro at that time.
In February 1991, while washing the Camaro, Dodd noticed that a groove that was supposed to be on the right rear quarter panel had been filled in. Suspecting that the Camaro had been damaged and repaired before he had purchased it, Dodd complained to Stephenson Chevrolet. In response, Mrs. Nelda Stephenson, president of Stephenson Chevrolet, conducted a paint test of the area of the Camaro that Dodd claimed had been damaged, repaired, and repainted.
A paint test measures the thickness of the paint on a car to determine whether the car has been repainted. According to Nelda Stephenson's affidavit, an automobile factory can apply paint to a vehicle more thinly than an automobile body repair shop can. The test thus helps determine whether a car has been damaged and repaired after it was manufactured.
Dodd and Stephenson Chevrolet dispute the meaning of the paint test conducted on the Camaro. Both Dodd's affidavit and Ray's affidavit state that the paint on the right rear quarter panel of the Camaro measured 6-8 "milliliters" in depth, while the thickness of the paint on other new cars at the dealership and on other portions of Dodd's Camaro, they said, measured only 2-4 "milliliters." According to the affidavits of Dodd and Ray, Nelda Stephenson said, after concluding the paint test, that the right rear quarter panel had been repainted. However, in her own affidavit, Nelda Stephenson says that she told Dodd only that the paint on the right rear quarter panel of the Camaro measured 6 "milliliters," while paint applied by body shops usually measures around 10-14 "milliliters" in depth.
Dodd also had the Camaro inspected by Dan Sharp, an employee of A-One Body, an automobile repair shop, and Kenneth Davis, owner of Davis Body Shop. Sharp and Davis testified that the irregularity in the groove moldings and the paint finish on the right rear quarter panel indicated that the car had been damaged, repaired, and repainted.
A delivery receipt reflecting the delivery of the Camaro from the factory to Hembree Motors in October 1989 states: "Car has serious paint problems all over. Factory." In his affidavit, Robert L. Hembree, Jr., president of Hembree Motors, testified that the Camaro had suffered no damage while in the possession of Hembree Motors and that Hembree Motors had performed no body work, painting, or repairs on it during the six months it was in the possession of Hembree Motors. Robert Hembree's affidavit also states that the inspection of the car by Hembree Motors upon its delivery revealed no damage to the vehicle. In his affidavit, Almon Truitt states that he did not notice any defects in the Camaro when he picked it up at Hembree Motors and drove it to Stephenson Chevrolet.
A summary judgment, under Rule 56, Ala.R.Civ.P., is proper only when the trial court determines that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. On a motion for summary judgment, when the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact.[1]Cobb v. Southeast Toyota Distributors, Inc., 569 So.2d 395 (Ala.1990); Bean v. Craig, 557 So.2d 1249, 1252 (Ala. 1990); Rule 56(e), Ala.R.Civ.P.; § 12-21-12, Alabama Code 1975. The evidence is viewed most favorably to the nonmovant, and all reasonable doubts concerning the existence of a genuine issue of material fact are resolved against the movant. Specialty Container Mfg., Inc. v. Rusken Packaging, Inc., 572 So.2d 403, 404 (Ala.1990); Stark v. Troy *1291 State Univ., 514 So.2d 46 (Ala.1987); Lolley v. Howell, 504 So.2d 253 (Ala.1987).
Because this case involves multiple claims against multiple defendants, we examine each defendant and the claims against it separately.

Claims Against Stephenson Chevrolet
Dodd asserts first that Stephenson Chevrolet fraudulently misrepresented that the 1990 Camaro was a "new" car, or, alternatively, that Stephenson Chevrolet fraudulently concealed that it was not "new." Dodd argues, therefore, that the trial court erred in entering the summary judgment in favor of Stephenson Chevrolet because, Dodd says, he presented substantial evidence that, although it had not been previously sold, the Camaro was not "new."
Section 6-5-101, Alabama Code 1975, provides a cause of action for misrepresentations of material fact:
"Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
(Emphasis added.) We note that under § 6-5-101 "legal fraud" includes misrepresentations of material fact made "by mistake and innocently," as well as those made either "willfully to deceive, or recklessly without knowledge." Young v. Serra Volkswagen, Inc., 579 So.2d 1337, 1339 & n. 3 (Ala.1991).
Because we find no evidence that Stephenson Chevrolet made any misrepresentation willfully or with reckless disregard of the truth, we address Dodd's argument that Stephenson Chevrolet innocently or mistakenly misrepresented that the Camaro was "new." To recover under a claim of innocent misrepresentation, a plaintiff must prove (1) that there was a false representation; (2) that it concerned a material fact; (3) that the plaintiff reasonably or justifiably relied on the material misrepresentation; and (4) that the plaintiff was damaged as a proximate result of the reliance. Mahoney v. Forsman, 437 So.2d 1030 (Ala.1983).
Stephenson Chevrolet argues that in the circumstances of this case it cannot be liable because it made no misrepresentation of fact. Moreover, Stephenson Chevrolet contends, no evidence indicates that it knew of the alleged defects in the Camaro or that it even had an opportunity to discover them. In reply, Dodd argues that even if the dealership did not know of the defects or was unable to discover them while the Camaro was in its possession, Stephenson Chevrolet may nonetheless be liable for innocently misrepresenting that the Camaro was "new."
In support of this argument, Dodd refers to the "reasonable expectation" standard first enunciated in Mathis v. Jim Skinner Ford, Inc., 361 So.2d 113 (Ala.1978):
"Purchasers have a right to assume that new automobiles will perform in accordance with reasonable expectations and in accordance with implied representations inherent in marketing such products. Absent express representation, implied representations are not uncommon in the sale of new products, and reliance thereon may be shown by the totality of the circumstances and the underlying nature of the transaction itself. These concepts have long been recognized in actions based upon breach of an implied warranty and, under proper circumstances, may support a tort action for misrepresentation."
361 So.2d at 115; see also Ford Motor Co. v. Burkett, 494 So.2d 416 (Ala.1986); Larry Savage Chevrolet, Inc. v. Richards, 470 So.2d 1168 (Ala.1985); Boulevard Chrysler-Plymouth, Inc. v. Richardson, 374 So.2d 857, 859-60 (Ala.1979). Thus, under Mathis, implied representations may arise out of the mere sale of a new product, and such representations, if false, may support a claim of fraud. Burkett, 494 So.2d at 417.
The trial court erred in entering the summary judgment as to the claim of innocent misrepresentation on the part of Stephenson Chevrolet. Drawing all relevant inferences in favor of Dodd, as the applicable standard of review requires, we conclude that, given the circumstances of this case, Dodd presented substantial evidence that Stephenson Chevrolet impliedly represented that the car was "new" and that Dodd relied *1292 on this implied representation when he bought the Camaro. Although no evidence indicates that Stephenson Chevrolet specifically told Dodd that the car he was buying was "new," it is reasonably inferable from the undisputed facts and circumstances of the sale that when Dodd visited Stephenson Chevrolet on May 5, 1990, he was looking for a "new" 1990 Chevrolet Camaro R.S. and that Stephenson Chevrolet impliedly represented that it was selling him one.
We also hold that Dodd's deposition testimony, the affidavit testimony of Dodd and Ray regarding the results of the paint test, and the affidavits of the automobile body repairmen Dan Sharp and Kenneth Davis constitute substantial evidence that the Camaro had been damaged before its sale to Dodd and was therefore not "new." Except in rare circumstances, where a car has undergone repair or alteration so major that it is obviously not "new" or so minor that it undisputedly is "new," the question of whether a car initially sold with repaired damage was "new" when it was sold is one of fact. Boulevard Chrysler-Plymouth, Inc., 374 So.2d at 857. The affidavits of the automobile body repairmen and the affidavits of Dodd and Ray concerning the results of the paint test constitute "substantial evidence" from that evidence a fair-minded person could reasonably infer that the Camaro had undergone more than minor repairs and adjustments before its sale to Dodd and thus that it was not "new," "in accordance with reasonable expectations." Id., at 859.
Even though Dodd presented no evidence that Stephenson Chevrolet knew of any prior damage to the Camaro, Stephenson Chevrolet may be liable for innocent misrepresentation. Although knowledge of a falsehood or reckless disregard for the truth is an essential element of the tort of deceit, § 6-5-103, Alabama Code 1975, it is not an element of the tort of innocent misrepresentation. See Ex parte Lewis, 416 So.2d 410, 411-14 (Ala.1982) (Jones, J., concurring specially).
In Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970), this Court addressed this issue in substantially similar circumstances. In Hall, the plaintiff went to Hall Motor Company in Bessemer, Alabama, seeking a Plymouth station wagon of a certain type and color. Although the dealership did not have in stock what the plaintiff wanted, it located one at another dealership in Selma. The plaintiff drove with a sales representative to Selma to examine the car. Pleased with the station wagon, the plaintiff drove it back to Bessemer, where the parties completed the sale. After noticing defects in the car, the plaintiff had it inspected by two automobile mechanics, who informed him that the car had been damaged. The plaintiff brought an action against Hall Motor Company, alleging that the dealership had fraudulently misrepresented to him that the station wagon was a new automobile in good working condition. The evidence presented to the jury showed that the damage had occurred at the factory and that the dealership had been unaware of the damage when it sold the station wagon to the plaintiff. In holding that the trial court erred in permitting an award of punitive damages against the dealership when there was no evidence of any intent to deceive, the Court stated that the evidence was nonetheless sufficient to establish an innocent misrepresentation. Therefore, like the car dealership in Hall, Stephenson Chevrolet may be held liable for innocently misrepresenting that the car it sold to Dodd was "new," even though it was unaware of any prior damage or major alteration.
We now address Dodd's claim alleging suppression of a material fact by Stephenson Chevrolet. Section 6-5-102, Ala. Code 1975, provides:
"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
One can be liable for suppression only of a fact of which one has knowledge. Cornelius v. Austin, 542 So.2d 1220, 1224 (Ala.1989); Cherokee Farms, Inc. v. Fireman's Fund Ins. Co., 526 So.2d 871, 875 (Ala.1988); Harrell v. Dodson, 398 So.2d 272, 276 (Ala.1981).
Dodd introduced no evidence that Stephenson Chevrolet knew of the alleged *1293 defects. There is no evidence that Hembree Motors forwarded to Stephenson Chevrolet the delivery receipt stating "Car has serious paint problems all over. Factory." The evidence is undisputed that Stephenson Chevrolet had possession of the Camaro for only two hours. Undisputed also is the fact that Stephenson Chevrolet did not even have time to clean the Camaro before Dodd took possession of it. A fair-minded person in the exercise of impartial judgment could not reasonably infer from Stephenson Chevrolet's mere possession of the Camaro for two hours that it knew of the alleged defects, much less that it knowingly concealed them with an intent to deceive. In fact, Dodd himself did not notice any problem with the paint until several days after the purchase, when he washed the car, and he did not notice the irregularity in the grooves until almost nine months after buying the car. Dodd has not submitted substantial evidence in support of his claim alleging suppression by Stephenson Chevrolet. The judgment is therefore due to be affirmed as to that claim.
Dodd's complaint also alleged that Stephenson Chevrolet breached an express warranty, an implied warranty of merchantability, and an implied warranty of fitness for a particular purpose. Dodd, however, does not argue or cite authority for the reversal of the judgment as to these warranty claims. Therefore, we affirm the judgment as to these claims on the authority of Young v. Serra Volkswagen, Inc., 579 So.2d 1337 n. 2 (Ala.1991); Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala.1990); Henderson v. Alabama A & M Univ., 483 So.2d 392 (Ala.1986).

Claims Against Hembree Motor Company
Dodd's only argument with regard to the claims against Hembree Motors is that he presented substantial evidence to support his claim of fraudulent concealment.[2] Dodd argues that he presented substantial evidence that Hembree Motors knew of the Camaro's serious paint problems while the car was in its possession and that Hembree Motors did not disclose them when it sold the Camaro to Stephenson Chevrolet. Therefore, Dodd argues, Hembree Motors fraudulently concealed that the Camaro had been damaged. In support of his contentions, Dodd notes the October 1989 receipt for the delivery of the Camaro to Hembree Motors, which includes the statement: "Car has serious paint problems all over. Factory."
In reply, Hembree Motors cites the affidavit testimony of Robert L. Hembree, Jr., who stated that while the Camaro was in the possession of Hembree Motors, the Camaro was neither damaged nor repaired. Hembree Motors also contends that its inspection of the car upon its delivery to Hembree Motors revealed no damage to the vehicle and that in his affidavit Almon Truitt stated that he noticed no defect in the Camaro when he delivered it to Stephenson Chevrolet.
To establish a prima facie case of fraudulent concealment of a material fact, a plaintiff must show (1) that the defendant had a duty to disclose a material fact, (2) that the defendant concealed or failed to disclose a material fact, (3) that the defendant's concealment or failure to disclose the material fact induced the plaintiff to act or to refrain from acting, and (4) that the plaintiff suffered actual damage as a proximate result. Soniat v. Johnson-Rast & Hays, 626 So.2d 1256 (Ala.1993); see Cornelius v. Austin, 542 So.2d 1220, 1223 (Ala.1989).
Mere silence is not fraudulent in the absence of a duty to disclose. A duty to disclose may arise from the particular circumstances of the case, from a confidential relationship, or from a request for information. Hardy v. Blue Cross & Blue Shield of Alabama, 585 So.2d 29, 32 (Ala.1991); King v. National Foundation Life Ins. Co., 541 So.2d 502 (Ala.1989). One may also recover for fraudulent concealment by showing active *1294 concealment of a material fact with an intent to deceive or mislead. § 6-5-103, Alabama Code 1975; Soniat v. Johnson-Rast & Hays; Cornelius v. Austin; Harrell v. Dodson, 398 So.2d 272, 276 (Ala.1981).
Although Dodd presented substantial evidence that Hembree Motors knew of the Camaro's paint problems, Dodd failed to present substantial evidence that Hembree had a duty to disclose them. As with Stephenson Chevrolet, Dodd produced no evidence of any special circumstances or a confidential relationship.[3] Thus, the summary judgment is correct to the extent that the complaint alleges suppression of a material fact. Neither did Dodd present any evidence of knowing, active concealment of a material fact with an intent to deceive. Although the delivery receipt constitutes substantial evidence from which a reasonable trier of fact could infer that Hembree Motors knew of the paint problems, the record contains no evidence to support the inference that Hembree Motors actively or knowingly concealed these problems with an intent to deceive. See Soniat, 626 So.2d at 1259; Cornelius, 542 So.2d at 1224-25; Harrell, 398 So.2d at 277. Moreover, Dodd cites no authority for the proposition that Hembree Motors, as opposed to Stephenson Chevrolet, had any obligation to disclose facts to him or that he is entitled to bring an action based on the failure of Hembree Motors to disclose those facts to Stephenson Chevrolet. Therefore, the trial court properly entered a summary judgment on Dodd's claim of fraudulent concealment against Hembree Motors.
Because Dodd makes no argument in support of his claims against Hembree Motors alleging breach of express warranty, implied warranty of merchantability, or implied warranty of fitness for a particular purpose, the judgment is affirmed as to those claims. Young v. Serra Volkswagen, Inc., supra; Bogle v. Scheer, 512 So.2d 1336 (Ala.1987).

Claims Against General Motors
Because Dodd makes no argument in support of his claims against General Motors, the judgment is affirmed as to General Motors. Young v. Serra Volkswagen, Inc., supra; Bogle v. Scheer, supra.

Conclusion
Based on the foregoing, we reverse the trial court's judgment as to Dodd's claim against Stephenson Chevrolet for innocent misrepresentation; as to all other claims, we affirm.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
MADDOX, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
HORNSBY, C.J., and SHORES and INGRAM, JJ., concur in part and dissent in part.
HORNSBY, Chief Justice (concurring in part and dissenting in part):
Although I agree with the majority's holding regarding the claims against Stephenson Chevrolet,[4] I respectfully dissent from its affirmance of the summary judgment in favor of Hembree Motors on Dodd's claim of fraudulent suppression.
As the majority notes, to establish a claim of fraudulent suppression, Dodd must show that Hembree Motors suppressed or concealed a material fact that it was under a duty to disclose, that concealment or failure by Hembree Motors to disclose induced him to act or to refrain from acting, and that Dodd suffered damage as a result. Soniat v. Johnson-Rast & Hays, 626 So.2d 1256 (Ala. 1993). Unlike the majority, however, I *1295 would hold that Dodd presented substantial evidence creating a genuine issue of material fact as to each of these elements.
Dodd presented substantial evidence that Hembree Motors, unlike Stephenson Chevrolet, knew that the 1990 Camaro he purchased had "serious paint problems all over" when it received it. See Cherokee Farms, Inc. v. Fireman's Fund Ins. Co., 526 So.2d 871, 875 (Ala.1988) (holding that, as a matter of law, one can be liable only for concealing facts of which one has knowledge); Harrell v. Dodson, 398 So.2d 272, 276 (Ala.1981). Dodd presented evidence that, on October 22, 1989, when the 1990 Camaro was delivered by Commercial Carriers, Inc., to Hembree Motors, the delivery receipt signed by the Commercial Carrier driver and by the Hembree Motors agent carried the words "Car has serious paint problems all over. Factory." Under general agency law, the knowledge of an agent of Hembree Motors "concerning the subject matter of the agency is imputed to the principal." Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359, 366 (Ala.1993). Accordingly, Hembree Motors is presumed to have known that the 1990 Camaro had "serious paint problems all over" when it was delivered.
In addition, I would hold that Dodd presented substantial evidence creating a jury question as to whether Hembree Motors owed him a duty to disclose material facts regarding the condition of the car. The question whether Hembree Motors owed Dodd a duty to communicate is a question of law. Berkel & Co. Contractors, Inc. v. Providence Hosp., 454 So.2d 496, 506 (Ala.1984).
Ala.Code 1975, § 6-5-102, provides that an "obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Dodd presented evidence that the particular circumstances of the case gave rise to a duty on the part of Hembree Motors to disclose to Dodd material facts regarding the condition of the car.
This Court has acknowledged that one who knows facts that are unknown to the plaintiff owes an obligation to disclose those facts where the plaintiff cannot reasonably be expected to discover those facts by due diligence. Deupree v. Ruffino, 505 So.2d 1218, 1222 (Ala.1987); Jim Short Ford Sales, Inc. v. Washington, 384 So.2d 83, 86 (Ala.1980); Bank of Red Bay v. King, 482 So.2d 274, 285 (Ala.1985) (holding that a duty to speak depends on the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances). See also Dominick v. Dixie Nat'l Life Ins. Co., 809 F.2d 1559 (11th Cir.1987) (where the accused has superior knowledge of the undisclosed fact and the defrauded party has been induced to take action which he might not otherwise have taken, the obligation to disclose is particularly compelling); Kaye v. Pawnee Constr. Co., 680 F.2d 1360 (11th Cir.1982) (an obligation to communicate may arise in a vendor/vendee relationship where the vendor knows the material facts and has a reason to believe that the person with whom he is dealing is ignorant of those facts and cannot, by ordinary diligence, become acquainted with those facts); First Virginia Bankshares v. Benson, 559 F.2d 1307, reh'g denied, 564 F.2d 416 (5th Cir.1977), cert. denied, 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978) (recognizing a duty to disclose where one party has some particular knowledge or expertise not shared by the plaintiff).
As early as 1919, this Court recognized that particular circumstances giving rise to a duty to disclose exist where a car dealer knows material facts regarding the condition of the car that are unknown to the purchaser of that car. Standard Motorcar Co. v. McMahon, 203 Ala. 158, 160, 82 So. 188, 190 (1919). See also Neil Huffman Volkswagen Corp. v. Ridolphi, 378 So.2d 700, 702 (Ala. 1979).
Imposition of a duty to disclose under these circumstances is consistent with the holdings of other courts. Regarding the particular circumstances of the case giving rise to a duty to disclose, Prosser notes:
"[T]here has been a rather amorphous tendency on the part of most courts to find a duty of disclosure in cases where the defendant has special knowledge or means of knowledge not open to the plaintiff and is aware that the plaintiff is acting under a misapprehension as to facts which would *1296 be of importance to him and would probably affect his decision."
Prosser, Torts, Chap. 18, § 106 (4th ed. 1971).
In this case Hembree Motors did not actually negotiate with Dodd for the sale of the car; rather, Hembree Motors negotiated with Stephenson Chevrolet, which, similarly, could not reasonably be expected to have known of the factory paint defects. Dodd presented substantial evidence that Hembree Motors did not disclose its knowledge of the paint defects to Stephenson Chevrolet. In addition, Dodd presented evidence from which one could infer that Hembree Motors knew or should have known that Stephenson Chevrolet wanted the vehicle to sell it to one of its customers.
This Court has repeatedly rejected the argument that a vendor owes a duty to disclose material facts only to the immediate purchaser. Johnny Spradlin Auto Parts, Inc. v. Cochran, 568 So.2d 738, 743 (Ala. 1990); Lawyers Title Ins. Corp. v. Vella, 570 So.2d 578 (Ala.1990); Hopkins v. Lawyers Title Ins. Corp., 514 So.2d 786 (Ala.1986) (noting that a defendant's duty to disclose may exist in the absence of a contractual relationship or without dealing between the parties); Kirkpatrick v. White, 289 Ala. 110, 266 So.2d 268 (1972); Sims v. Tigrett, 229 Ala. 486, 158 So. 326 (1934). Therefore, I believe that under these circumstances Dodd may proceed against Hembree Motors for fraudulent suppression.
I would hold that, in addition to a common law duty to disclose, Hembree Motors also has an obligation under Ala.Code 1975, § 8-19-1 et seq., to disclose material facts regarding the condition of the car. In Johnny Spradlin Auto Parts, Inc. v. Cochran, 568 So.2d 738, 743 (Ala.1990), this Court held that a separate statutory requirement may impose a duty on one to disclose facts that can be the subject of a fraudulent suppression claim.
Section 8-19-5 provides:
"The following acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful:
". . . .
"(6) Representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, second-hand or altered to the point of decreasing their value or rendering the goods unfit for the ordinary purpose for which they were purchased, provided that this subdivision shall not apply to new goods which have been reconditioned, reclaimed or repaired and such fact is disclosed to the purchaser."
(Emphasis supplied.)
Dodd presented substantial evidence that the paint defects in the 1990 Camaro decreased the value of the car. Therefore, I would hold that the implied or express representation of Hembree Motors that the car was new, when in fact it was "deteriorated, reconditioned, reclaimed, used, second-hand or altered to the point of decreasing [its] value," is prohibited by Alabama's Deceptive Trade Practices Act.
The requirements of the Deceptive Trade Practices Act apply to Hembree Motors, an entity involved "in the conduct of ... trade or commerce." § 8-19-5. Dodd presented substantial evidence that Hembree Motors is involved in selling motor vehicles; this activity is included within the definition of "trade or commerce" in § 8-19-3(8). Motor vehicle dealers are not exempt from the prohibitions of Alabama's Deceptive Trade Practices Act. See § 8-19-7(1)-(6) (enumerating the exemptions to the Act). Therefore, I would hold that § 8-19-5 imposed a duty on Hembree Motors to disclose to Stephenson Chevrolet that the car had paint defects.
Furthermore, I would hold that, under the circumstances of this case, the duty on Hembree Motors to disclose pursuant to § 8-19-5(6) extends to Dodd, the ultimate purchaser of the car. The extension of this duty to Dodd is consistent with the purposes of the Act: "The public health, welfare and interest require a strong and effective consumer protection program to protect the interest of both the consuming public and the legitimate businessperson." Ala.Code 1975, § 8-19-2. The statute also provides for a private right of action by consumers and provides for the attorney general to petition for penalties upon a violation of § 8-19-5. In light of the statute's consumer protection nature, I believe that the duty of Hembree Motors to disclose to Stephenson Chevrolet inures to the benefit of Dodd, the ultimate purchaser of the car.
*1297 Dodd also presented evidence that Hembree Motors did not inform Stephenson Chevrolet or him of the paint defect and possible prior damage to the car. This evidence raises a jury question as to whether Hembree Motors suppressed or concealed its knowledge of material facts regarding the condition of the 1990 Camaro. A "material fact," within the meaning of the Alabama fraud statutes, is a fact of such a nature as to induce action on the part of the complaining party. Bank of Red Bay v. King, 482 So.2d 274 (Ala.1985). Dodd's evidence that an agent of Hembree Motors signed the delivery receipt that indicated that the "[c]ar has serious paint problems all over" constitutes substantial evidence from which the trier of fact could reasonably infer that Hembree Motors fraudulently suppressed information regarding the condition of the car, in violation of its duty to disclose.
Furthermore, Dodd presented substantial evidence that concealment or suppression on the part of Hembree Motors induced him to purchase the car and that he suffered actual damage as a proximate result. I believe, therefore, that the majority errs in affirming the summary judgment for Hembree Motors as to the suppression claim. Accordingly, I respectfully dissent as to that portion of the majority's opinion.
SHORES and INGRAM, JJ., concur.
NOTES
[1] "Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
[2] Dodd's only allegations against Hembree Motors were in count four, which alleged suppression of a material fact, and count five, which alleged breach of warranty. We will treat count four as sufficient to allege a claim for fraudulent concealment. We disagree with the dissent, however, in its treatment of the appeal as presenting a claim that Hembree Motors made a fraudulent misrepresentation that the car was a new car and as presenting an issue of whether any such misrepresentation was indirectly made to Dodd.
[3] Dodd did not argue, either in the trial court or in his brief to this Court, that Hembree Motors had a statutory duty to disclose pursuant to Ala. Code 1975, § 8-19-5. Therefore, the judgment for Hembree Motors is not due to be reversed on such a ground.
[4] Although this point is not essential to the resolution of this case, I wish to point out that I disagree with the majority's use of "reasonable reliance" language. The majority cites Mahoney v. Forsman, 437 So.2d 1030 (Ala.1983), which was decided before this Court adopted the standard of "justifiable reliance" in Hickox v. Stover, 551 So.2d 259 (Ala.1989). Rather than referring to that standard, the majority indicates that a plaintiff may satisfy the element of reliance by proving "that the plaintiff reasonably or justifiably relied on the material representation." At 1291. (Emphasis supplied.)