ALMON, Justice.
The plaintiffs, Wendell and Linda Swims, appeal from a summary judgment on their fraud claim arising from their rental of a house from the defendant, William Chappie. The issue is whether the alleged misrepresentation concerned a material fact or only a matter of opinion.
The Swimses saw an advertisement Chap-pie had placed in The Decatur Daily. Linda Swims made an appointment with Dean Chappie, William Chappie’s wife, to see the house. At the showing, Wendell Swims asked whether the house was subject to flooding. The Swimses were aware that the house had been flooded 17 years earlier and that a large bank that had formerly surrounded the house had recently been removed. The Swimses assert that in response to this inquiry Dean Chappie said that, because both the City of Hartselle and the Tennessee Valley Authority (“TVA”) had done some work on the drainage of two creeks near the house, the property “was not supposed to flood again.” The Swimses also asked why the bank had been removed, and, according to their depositions, Dean Chappie answered, “because there wasn’t any need for it any more, that it wasn’t supposed to flood again.” The Swimses said they desired to lease the house. Dean Chappie told them that she would speak to her husband.
The Swimses went to William Chappie’s place of business to sign the lease. It is undisputed that both during this meeting, at which Mr. and Mrs. Swims and Mr. and Mrs. Chappie were present, and at the earlier showing of the house, when William Chappie was not present, flooding of the house was discussed. The Swimses assert that on the later occasion they asked the same questions they had asked Dean Chappie regarding flooding and why the bank had been removed. Mr. Swims testified in deposition:
“[William Chappie answered] that there was no more need for it [the bank], that it shouldn’t ever flood again because the city had [done] irrigation work to the little creek behind the house, and TVA [had] done work to the big creek, which is Flint Creek, about a half a mile from the house.
[[Image here]]
“Q. Did he express to you what TVA had done on Flint Creek?
“A. Yes, he did state some channel work or something.
*1358 “Q. They had done some type of channel work?
“A. Yes.”
The Swimses signed the lease during the second meeting. The lease provided: “The renter shall provide insurance to cover said furniture and personal property. ... The landlord will not be liable for any damage to the renter’s personal property on account of any defect in said buildings or premises, or from rain, wind or other causes.”
Before signing the lease Wendell Swims inquired with the City of Hartselle and determined that the city had in fact worked on the drainage of the creek closest to the property in question. He telephoned the office of the Joe Wheeler Electric Membership Cooperative in an effort to determine whether TVA had done similar work on the larger creek. He said that the Joe Wheeler office was unable to answer his question and that he did not pursue the matter by communicating directly with TVA.
The Swimses signed the lease on June 10, 1989, and moved into the house shortly thereafter. In December 1990 the house flooded after heavy rains. The water rose almost five feet inside the house, and the Swimses estimated their resulting property loss at $30,275. After the flood, the Swimses learned that neither TVA nor any other governmental agency had done any drainage work on the larger creek. This fact is confirmed by the affidavit of Lee Y. Greene, area engineer for the United States Department of Agriculture Soil Conservation Service.
The Swimses argue that the Chappies’ statements, that TVA had made drainage improvements to Flint Creek to prevent further flooding, were fraudulent. They assert that the representation concerning TVA drainage work was false and that they entered the lease relying on this representation.
A summary judgment is due to be entered if there is “no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” Rule 56(c)(3), Ala.R.Civ.P.; Fuqua v. Ingersoll-Rand Co., 591 So.2d 486 (Ala.1991). The movant has the burden of making a prima facie showing that there are no genuine issues of material fact and that he is entitled to a judgment as a matter of law. If the movant makes such a showing, the burden then shifts to the plaintiffs to rebut this showing by substantial evidence. Fuqua v. Ingersoll-Rand Co., supra.
Chappie characterizes the representation on which the Swimses base their'fraud complaint as merely a statement of Chappie’s opinion that the property should not flood again. He relies on the rule that opinions are not material facts on which a fraud action may be based. Jones v. McGuffin, 454 So.2d 509, 512 (Ala.1984); Harrell v. Dodson, 398 So.2d 272 (Ala.1981). If there exists no misrepresentation of a material fact then the defendant is entitled to a judgment as a matter of law.
The Swimses assert that they relied not only on the Chappies’ opinion that the house shouid not flood again but also on the Chappies’ specific statements that TVA had done channel work on the larger creek. This is undoubtedly a factual assertion. According to the affidavit of Lee Y. Greene, this representation was false, because, Greene said, TVA never did any such work.
In his deposition, Chappie states that he cannot remember whether he made any such representation about TVA. Both plaintiffs assert that each of the Chappies made such a statement. A jury could find that the statement was made, that it was false, and that it concerned a material fact because it could have been the deciding factor in allaying the Swimses’ concerns about flooding. There is also a genuine issue of material fact concerning whether the Swimses relied on the alleged representation that TVA had done drainage work on the large creek. The judgment is therefore reversed, and the cause is remanded.
REVERSED AND REMANDED.
ADAMS, STEAGALL and INGRAM, JJ., concur.
HOUSTON, J., concurs specially.